Joseph F. **PURCELL,** Plaintiff–Counter–Claim–Defendant–Appellant,

v.

**UNITED STATES of America,** Defendant–Counter–Claimant–Appellee.

No. 91–55487.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 2, 1993.

Decided Aug. 5, 1993.

Steven Toscher, Hochman, Salkin and DeRoy, Beverly Hills, CA, for plaintiff-counter-claim-defendant-appellant.

Kenneth W. Rosenberg, U.S. Dept. of Justice, Washington, DC, for defendant-counterclaimant-appellee.

Before: HUG, FERGUSON, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether a corporate president may be held personally liable for his corporation's failure to pay over federal withholding taxes to the Internal Revenue Service when he had delegated responsibility for all financial matters to his chief financial officer.

## I

Joseph Purcell ("Purcell") was president and sole shareholder of Purcell Temporaries, Incorporated (the "Company"). From the time he founded the Company in 1978 until February 1980, Purcell also served as its chief financial officer ("CFO"). At that point, however, Purcell decided to devote more of his energies to sales and promotional activities, and so hired one Lester Hatchard ("Hatchard") as CFO. This was not a good decision. Hatchard embezzled over $450,000 from the Company during his tenure, using a signature stamp bearing Purcell's signature to issue Company checks payable to himself. Eventually, Purcell learned that Hatchard had a prior criminal record; confronted with this discovery, Hatchard resigned his position in July 1981.[1]

After Hatchard left the Company, Purcell reassumed control over its financial affairs. He quickly discovered that, contrary to what he had been led to believe, the Company was in terrible financial shape, with a negative net worth, and a substantial net bank overdraft. He also learned that Hatchard had failed to file federal employment tax returns for the first two quarters of 1981 (the "Hatchard Period"), and that the withheld taxes had not been paid over to the Internal Revenue Service ("IRS").

There followed a number of meetings between Purcell and the IRS regarding the Company's tax situation. Precisely what transpired in these meetings is unclear. Purcell alleges that he was led to believe that if he were to continue to operate the Company, paying its current tax liabilities and be-

---

1. Hatchard later pled guilty to charges of embezzlement and served a prison term. In the same litigation which is the subject of this appeal, a default judgment was entered against Hatchard as a responsible person under § 6672 with respect to the Company's unpaid withholding taxes for the first two quarters of 1981.

ginning the process of paying off the Hatchard Period liabilities, the IRS would not seek to hold him personally liable for the delinquent taxes. In any event, returns were filed and withholding taxes duly paid over by the Company in each of the last two quarters of 1981 and the first quarter of 1982. During the second and third quarters of 1982 (the "post-Hatchard Period"), returns were properly filed, but not all the withheld taxes were paid over. In 1983, the Company filed for bankruptcy protection.

On March 27, 1985, the IRS assessed Purcell in the amount of the unpaid withholding taxes for 1981 and 1982. Purcell eventually brought this suit in federal district court, seeking refund of certain amounts transferred to the IRS in partial satisfaction of those liabilities, as well as other relief. The United States filed a counterclaim seeking judgment for the balance of the assessment.

In January 1991, a three-day jury trial was held. At the close of the evidence both sides made motions for directed verdicts. A series of hearings was held over several days, after which the government's motion was granted, and Purcell's denied. Purcell appeals.

## II

The Internal Revenue Code requires that certain employers withhold federal income and social security taxes from the wages of their employees. 26 U.S.C. §§ 3102(a), 3402(a). Withholding occurs each pay period, and payment is made to the government on a quarterly basis. Prior to the time they are paid over, the withheld taxes constitute a special fund held by the employer in trust for the government. 26 U.S.C. § 7501(a).

■ Section 6672[2] represents one of the means available to the government to ensure that these withheld taxes are collected and paid over. In relevant part it provides that "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax,

or truthfully account for and pay over such tax ... shall ... be liable to a penalty equal to the total amount of the tax ... not collected, or not accounted for and paid over." Thus "[t]he recovery of a penalty under section 6672 entails showing that the individual both was a 'responsible person' and acted willfully in failing to collect or pay over the withheld taxes." *Davis v. United States,* 961 F.2d 867, 869–70 (9th Cir.1992) (citation omitted), *cert. denied,* —— U.S. ——, 113 S.Ct. 969, 122 L.Ed.2d 124 (1993).

Purcell defends himself on both of the grounds suggested above: first, he argues that he was not a responsible person during the Hatchard Period; second, he argues that he did not willfully fail to pay over taxes withheld during that period.[3]

### A

■ It is undisputed that Purcell delegated full authority for handling the Company's finances to Hatchard, and that for so long as Hatchard remained with the Company Purcell took no active part in financial matters. Purcell argues that he was therefore not a "responsible person" during Hatchard's tenure as CFO and thus cannot be liable under section 6672 for the employment taxes that went unpaid during that period.

This circuit has consistently held that the "persons" who are "responsible" for the payment of withholding taxes are those who "had the final word as to what bills should or should not be paid, and when." *Wilson v. United States,* 250 F.2d 312, 316 (9th Cir. 1958). We acknowledge, however, that this provides no clear answer to the questions raised by Purcell. We must decide, then, whether Purcell can fairly be said to have "had the final word" as to the payment of creditors during the period in which he delegated his authority to Hatchard and exercised no control over the Company's day-to-day financial decision making.

---

**2.** All references are to the Internal Revenue Code, Title 26, United States Code.

**3.** On appeal, Purcell concedes that he comes within the terms of § 6672 with respect to the

post-Hatchard Period taxes. He argues, however, that he cannot be held liable for penalties on account of those taxes. *See infra* Part IV.

■ We note that in recent years other courts have uniformly and repeatedly rejected the delegation theory pressed upon us by Purcell. All courts agree, as we ourselves have said, that "responsibility is a matter of status, duty, and authority." *Davis*, 961 F.2d at 873 (citations omitted). Authority turns on the scope and nature of an individual's power to determine how the corporation conducts its financial affairs; the duty to ensure that withheld employment taxes are paid over flows from the authority that enables one to do so. *See Raba v. United States*, 977 F.2d 941, 943 (5th Cir.1992) ("The crucial examination is whether a person had the 'effective power to pay taxes.'") (citation omitted); *Bowlen v. United States*, 956 F.2d 723, 728 (7th Cir.1992) ("the key to liability under section 6672 is the power to control the decision-making process by which the employer corporation allocates funds"); *O'Connor v. United States*, 956 F.2d 48, 51 (4th Cir.1992) (whether person is responsible "is considered in light of the person's authority over an enterprise's finances or general decision making").

■ That an individual's day-to-day function in a given enterprise is unconnected to financial decision making or tax matters is irrelevant where that individual has the authority to pay or to order the payment of delinquent taxes. *See Denbo v. United States*, 988 F.2d 1029, 1033 (10th Cir.1993) (although "it was Allred ... who controlled the day-to-day operations of the corporation and made decisions concerning the payment of creditors and disbursement of funds," Denbo remained responsible because "[h]is financial involvement in the corporation, along with his check-signing authority, gave him the effective power to see to it that the taxes were paid"); *Bowlen*, 956 F.2d at 728 (even after "Briggs took over the day-to-day operations of" the corporation, "[t]he Bowlens remained responsible persons" because "they held sufficient control ... to ensure that other creditors were not preferred while the back taxes remained unpaid"); *McDermitt v. United States*, 954 F.2d 1245, 1251 (6th Cir.1992) ("[a]lthough not an officer of the corporation, plaintiff was" responsible because "[h]e had the power and the authority to direct the payment and non-payment of the corporation's liabilities").

■ It follows that "delegation will not relieve one of responsibility; liability attaches to all those under the duty set forth in the statute." *Thomsen v. United States*, 887 F.2d 12, 17 (1st Cir.1989). *See Bowlen*, 956 F.2d at 728 ("delegation of the duty to turn over the taxes does not relieve a responsible person from liability"); *see also Brounstein v. United States*, 979 F.2d 952, 955 (3d Cir. 1992) ("Instructions from a superior not to pay taxes do not ... take a person otherwise responsible under section 6672(a) out of that category."); *Thibodeau v. United States*, 828 F.2d 1499, 1504 (11th Cir.1987) ("an otherwise responsible person cannot be relieved of [his] obligation when directed by another person not to pay the taxes").

■ Guided by our sister circuits, we conclude that an individual may be said to have "had the final word as to what bills should or should not be paid" if such individual had the authority required to exercise significant control over the corporation's financial affairs, regardless of whether he exercised such control in fact. The authority that permits control carries with it a nondelegable duty to ensure that withholding taxes are duly collected and paid over to the government.

There can be no question that Purcell qualified as a "responsible person" under this standard. Even while Hatchard acted as the Company's CFO, Purcell remained as its president, its sole shareholder, and the only authorized signatory on its checking account. Indeed, Purcell does not argue that he lacked "authority" as we have defined it. The district court was therefore correct in ruling that the government was entitled to a directed verdict on the issue of Purcell's responsibility during the Hatchard Period.

## B

### 1

■ Purcell next argues that he did not willfully fail to pay the employment taxes here at issue. This contention, however, runs headlong into our recent decision in *Davis v. United States*, *supra*. In *Davis*, we

noted that a long line of decisions in this circuit has defined willfulness "as a voluntary, conscious and intentional act to prefer other creditors over the United States." 961 F.2d at 871 (citations and internal punctuation omitted). We then observed that "Davis's deliberate decision to use corporate revenues received after July 1982 (when Davis first became aware of the delinquency) to pay commercial creditors rather than to diminish [the corporation's] tax debt falls within the literal terms of this Circuit's definition of willfulness." *Id.*

Precisely the same thing must be said of Purcell. It is undisputed that after he reassumed control of the Company's finances, and knowing that the Company had not remitted to the government the taxes withheld during the Hatchard Period, he paid out corporate funds to numerous other creditors. Every such payment "was a voluntary, conscious and intentional act to prefer other creditors over the United States." *Davis* controls our decision here, establishing Purcell's willfulness with respect to the Hatchard Period as a matter of law.

**2**

■ *Davis* is also conclusive as to Purcell's argument that he is entitled to invoke the exception to section 6672 liability recognized by the Supreme Court in *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). "The Supreme Court held in *Slodov* that, if new management of a corporation assumes control when a delinquency for trust fund taxes already exists and the withheld taxes have already been dissipated by prior management, the new management's use of after-acquired revenues to satisfy creditors other than the United States does not make it personally liable for a section 6672 penalty." *Davis*, 961 F.2d at 871–72 (citing *Slodov*, 436 U.S. at 259–60, 98 S.Ct. at 1791). In *Davis*, after an exhaustive analysis of the question, we expressly declined to "extend *Slodov* to hold that the use of after-acquired funds to pay commercial debts by the same persons who were responsible for the failure to collect and pay the withholding taxes in the first instance (as opposed to new management) does not give

rise to liability under section 6672." *Id.* 961 F.2d at 872. Rather, we noted: "In the case of individuals who are responsible persons both before and after withholding tax liability accrues ... there is a duty to use unencumbered funds acquired after the withholding obligation becomes payable to satisfy that obligation; failure to do so when there is knowledge of the liability ... constitutes willfulness." *Id.* at 876 (quoting *Mazo v. United States*, 591 F.2d 1151, 1157 (5th Cir.), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979)).

Purcell admits he was a responsible person during the post-Hatchard Period. Our holding that he was similarly responsible during the Hatchard Period renders his attempts to distinguish *Davis* unavailing. Accordingly, we may not apply the *Slodov* exception to relieve Purcell of liability here.

**3**

■ Purcell also maintains that he cannot be said willfully to have failed to pay over the withheld taxes because the Company had no unencumbered funds available for that purpose. It is undisputed that Security Pacific Bank (the "Bank") had, at all relevant times, a perfected security interest in all the Company's assets. Pursuant to its financing agreement with the Bank, the Company's gross receipts were deposited under a lockbox arrangement, and new funds were advanced to the Company by the Bank from time to time. Purcell asserts that these funds were encumbered because "[t]he advances made by the Bank were for operating expenses and could not be used to satisfy the Hatchard Period taxes."

This circuit has not yet spoken on the question of what suffices to "encumber" the liquid assets of a business such that their use for a purpose other than paying delinquent withholding taxes will not be considered a "willful" failure to pay those taxes under section 6672. Some courts have been willing to recognize as an "encumbrance" only a "legal obligation" of the taxpayer to use funds to pay creditors other than the government. *See Honey v. United States*, 963 F.2d 1083, 1090 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 676, 121 L.Ed.2d 598 (1992).

Others have defined the term more broadly to encompass not only legal obligations per se, but also "restrictions imposed by a creditor"—restrictions that, while perhaps not legally enforceable, may be practically irresistible because they arise out of the disparity of bargaining power as between the taxpayer and its source of financing. *See id.* (quoting *In re Premo,* 116 B.R. 515, 535 (Bankr. E.D.Mich.1990)).

We need not, and so we do not, choose between these two competing standards in this litigation. Instead, we will assume, as Purcell contends, that the *In re Premo* standard applies, for we believe that, even under that relatively relaxed definition of "encumbered funds," Purcell has failed to carry his burden of proof on the issue. *See Honey,* 963 F.2d at 1087 (person against whom § 6672 liability is assessed has burden of proving that all potentially available funds were encumbered).

First, there was no testimony, either from Purcell or any officer of the Bank, identifying particular restrictions placed on the Company's use of funds. Second, although Purcell testified that the Bank "would not have allowed" the Company to use the funds advanced other than for current operating expenses, he explained that this was "[b]ecause there wouldn't have been the availability to do it," suggesting that the Company's lack of credit rather than the Bank's instructions as to what debts could be paid explains the Company's decisions. Finally, and perhaps most importantly, there is evidence in the record showing that the Company did make partial payment during 1982 on account of the 1981 Hatchard Period liabilities. Purcell confirmed this fact on cross-examination, and also stated his belief that these payments did not violate the Company's financing agreement with the Bank.

Under these circumstances, we hold that the district court properly directed a verdict in favor of the government on the encumbered funds issue.

### III

■ Purcell next argues that the district court erred in failing to permit the jury to decide whether the United States should be estopped from collecting the section 6672 penalty assessed against him.

■ In general, estoppel may be invoked only where a misrepresentation by one party is reasonably relied upon by a second party, who suffers detriment as a result. However, "the Government may not be estopped on the same terms as any other litigant." *United States v. Hatcher,* 922 F.2d 1402, 1410 (9th Cir.1991) (quoting *Heckler v. Community Health Servs.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984)). Before the government may be estopped, the aggrieved party must demonstrate "affirmative conduct going beyond mere negligence," and must also show "that the government's act will cause a serious injustice and the imposition of estoppel will not unduly harm the public interest." *S & M Investment Co. v. Tahoe Regional Planning Agency,* 911 F.2d 324, 329 (9th Cir.1990) (citing *Watkins v. United States Army,* 875 F.2d 699, 707 (9th Cir.1989) (en banc), *cert. denied,* 498 U.S. 957, 111 S.Ct. 384, 112 L.Ed.2d 395 (1990)), *cert. denied,* 498 U.S. 1087, 111 S.Ct. 963, 112 L.Ed.2d 1050 (1991). We apply this "two-prong test ... as a threshold matter before deciding whether the 'traditional elements' of estoppel are present." *Hatcher,* 922 F.2d at 1410 (citing *Watkins* ).

Purcell bases his estoppel claim on the assertion that Revenue Officer Robb, the IRS agent with whom he discussed the Company's tax situation in the wake of Hatchard's departure, "concealed" the fact that if Purcell continued to operate the business he might make himself personally liable for its unpaid withholding taxes under section 6672, ostensibly because the government had no realistic hope of collecting the delinquent taxes otherwise. Purcell argues that Robb was thus guilty of affirmative misconduct sufficient to support an estoppel against the government. Purcell further maintains that if he had been properly advised of his potential section 6672 liability by Revenue Officer Robb he would not have continued to operate the business,[4] and that to permit the govern-

---

4. We note that under our analysis in Part II.B., Purcell could not have been deemed to have

ment to impose section 6672 penalties against him under the circumstances would be a "serious injustice."

We are sympathetic to Purcell's plight. Even so, it is clear to us that the district court acted properly in directing a verdict against him on this issue. It is true that the government's own expert witness, Revenue Officer Samuels, testified that internal IRS procedures require that individuals in Purcell's position be told "that if the entity cannot make the payment of taxes, we can look to the responsible individuals" under section 6672. But there is no evidence that those procedures required Revenue Officer Robb to explain to Purcell precisely which individuals are considered "responsible" under section 6672, or to advise him regarding whether and under what circumstances he would be considered so responsible.

Moreover, the record simply does not support Purcell's suggestion that Revenue Officer Robb intentionally disregarded his duties, and knowingly concealed information from Purcell, while attempting affirmatively to mislead him as to his legal situation. Purcell testified only that Robb "encouraged" him to keep the business going, and behaved in a manner that led him to believe that the IRS would not seek to hold him personally responsible for the Hatchard Period taxes.[5] This testimony at best established a mere omission or negligent failure on Robb's part.

Our cases make clear that lapses of this sort do not rise to the level of affirmative misconduct sufficient to estop the government. Thus we have said that "a single oral misstatement by a government employee will ordinarily not constitute affirmative misconduct." *S & M Investment*, 911 F.2d at 329 (citing *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981); *Mukherjee v. INS*, 793 F.2d 1006, 1009 (9th Cir. 1986)). Affirmative misconduct involves " 'ongoing active misrepresentations' or a 'pervasive pattern of false promises' " as opposed to "an isolated act of providing misinformation." *Id.* (quoting *Watkins*, 875 F.2d at 708). Purcell's evidence, even if accepted by the jury, would have fallen short of the mark.

The district court did not err in directing a verdict in favor of the government on Purcell's estoppel claim.

## IV

Purcell argues that there was substantial evidence that the IRS made an assessment only for the third quarter of 1982, and that his liability was accordingly limited to the unpaid taxes accruing in that quarter. The evidence to which Purcell adverts consists entirely of the fact that the IRS Certificate of Assessments and Payments initially introduced into evidence by the government listed the date "9-30-82" in the box reserved for "taxable periods." An IRS official testified, however, that for administrative convenience, an aggregate assessment covering several taxable periods is typically identified by reference to the last date of the last period involved in the assessment. The government also introduced a more detailed Certificate, which the official testified was an accurate reflection of IRS records, and which

---

"willfully" failed to pay the Hatchard Period taxes—and so could not have been held liable for § 6672 penalties on account of those unpaid taxes—if he had not continued to operate the Company after Hatchard had gone.

5. Purcell testified that Robb "[t]old me to keep current payments on our current payroll tax liabilities and to pay down the delinquent portion;" that Robb was aware he was continuing to operate the Company; that Robb never advised him he could not pay current operating expenses to keep the Company going; that he undertook to do everything the IRS told him he was required to do; that although Robb never told him he would not be held liable for the Hatchard Period taxes, he "encouraged me to continue operating

and to pay the delinquent amounts on an amortized basis, [which] led me to believe there wasn't any [personal] liability;" that he was not aware in 1982 that if he continued to operate the Company the IRS would seek to hold him liable for the Hatchard Period taxes; that if he had been aware of this, he would not have continued to operate the Company; that he intended "to pay full liability on an amortized basis" and that Robb "agreed with that and actually sanctioned that," but that he could not produce a writing evidencing such an agreement. At trial, the parties stipulated that, if called as a witness, Robb would have testified that he had no recollection of what was said in his conversations with Purcell.

indicated each taxable period covered by the assessment. Moreover, it is undisputed that the amount of the assessment accurately reflects the total amount of the taxes withheld that the Company failed to pay over in the four quarters here at issue.

The district court did not err in granting the government's motion for a directed verdict on this issue.

**V**

Finally, Purcell alleges that proper notice and demand was never made under section 6303. He argues that the government's failure in this regard (1) precludes liability under section 6672, (2) renders the government's counterclaim untimely under the applicable statute of limitations, and (3) precludes the accrual of statutory interest on the amounts assessed.

**A**

■■■ The district court concluded that any failure on the part of the government to make proper notice and demand was irrelevant with respect to Purcell's liability under section 6672. The court relied on *United States v. Chila,* 871 F.2d 1015 (11th Cir.), *cert. denied,* 493 U.S. 975, 110 S.Ct. 498, 107 L.Ed.2d 501 (1989), which is squarely on point. The Eleventh Circuit in *Chila* reasoned that the notice provision of section 6303 is "for the protection of the taxpayer only in case the IRS use[s] the summary administrative remedies to collect the tax that are available to it.... [S]uch notice is not required as a prerequisite to filing a civil action, because the filing of the action allows sufficient time for the taxpayer to consider and pay any tax that is due before any judgment or lien can be made against his property." *Id.* at 1018. The weight of circuit authority is to the same effect. *See United States v. McCallum,* 970 F.2d 66, 69–70 (5th Cir.1992); *Security Indus. Ins. Co. v. United States,* 830 F.2d 581, 587 (5th Cir.

1987) (dictum); *United States v. Berman,* 825 F.2d 1053, 1060 (6th Cir.1987); *Marvel v. United States,* 719 F.2d 1507, 1513–14 (10th Cir.1983).[6] We agree with these decisions.

The district court therefore correctly held that any failure to make notice and demand would not affect Purcell's liability, and properly directed a verdict for the government in that respect.

**B**

■■■ Next, Purcell argues that a failure to make proper notice and demand deprives the government of the right to rely on the six-year limitations period for commencing a civil action contained in section 6502, relegating it to the three-year period provided in section 6501. As a consequence, he says, the government's counterclaim was untimely.

Section 6501 states that "the amount of any tax imposed by this title shall be assessed within three years after the return was filed ... and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period." Section 6502, however, states that a six-year limitations period applies "[w]here the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto...." Purcell contends, without analysis or citation to authority, that when an assessment is made but proper notice and demand is not sent, the assessment should not be considered valid for purposes of section 6502, and should not trigger its longer limitations period.

We have already held that a failure to send notice does not invalidate an underlying assessment such that the government is precluded from bringing a civil suit to collect assessed tax liabilities. We see no reason why such a failure should be held to invalidate the assessment such that the government is precluded from relying on the longer limitations period in section 6502. *See Unit-*

---

6. *But see United States v. Associates Commercial Corp.,* 721 F.2d 1094, 1100 (7th Cir.1983) (failure to make proper notice and demand barred subsequent civil action: "Section 6303(a) itself does not indicate that the right to notice is dependent on which tax collection option the government

uses."). The viability of this holding has been said to be highly questionable in light of the Supreme Court's subsequent decision in *United States v. Jersey Shore State Bank,* 479 U.S. 442, 107 S.Ct. 782, 93 L.Ed.2d 800 (1987). *See McCallum,* 970 F.2d at 69–70.

ed States v. Hunter Engineers & Constructors, Inc., 789 F.2d 1436, 1440–41 (9th Cir. 1986), cert. denied, 479 U.S. 1063, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987) ("[A]ssessment is more than just an administrative step in the enforcement of liens and levies. Assessment also serves to extend the statute of limitations.").

Purcell's argument regarding the applicable limitations period was properly rejected by the trial court.

## C

On appeal, as he did at trial, Purcell contends that the government did not prove that it gave notice of the assessment against him and demanded payment as required under section 6303.[7] We have explained that this contention is irrelevant with respect to Purcell's liability under section 6672. However, section 6601(e)(2)(A) provides that interest on an "assessable penalty" like the one established by section 6672 is payable only "for the period from the date of the notice and demand to the date of payment." Thus, the date upon which the government made notice and demand—and whether it did so at all—is critical with respect to the government's entitlement to interest.

As noted above, both sides moved for directed verdicts on all issues at the close of trial. The evidence of record relevant to notice and demand at that point consisted of: (1) Exhibit 52A, a Certificate of Assessment prepared by the IRS, which did not indicate that notice had been sent; (2) Exhibit 54, a second Certificate of Assessment, which did indicate that notice had been sent; (3) Exhib-

it 66, a computer printout showing the various coded entries which served as the raw data for the preparation of the two Certificates, and which did not indicate that notice had been sent; and (4) testimony of an IRS expert witness, Revenue Officer Kell, who said that, notwithstanding what the exhibits did or did not display, notice and demand would as a matter of course have been sent on the same day as the assessment was made. Purcell argued that this evidence was insufficient as a matter of law to establish that notice and demand had been sent. The government disputed the point, but suggested that if the court should find otherwise, it should reopen the evidence for the purpose of allowing the government to introduce another computer printout and the further declaration of Revenue Officer Kell, which would prove the fact conclusively.

In response, Purcell argued that whether notice and demand had been made was a question of fact for the jury, that the evidence in the case had already been closed, and that there was therefore no basis for reopening the case at that stage. The court rejected these arguments, holding that the government's right to interest "is a matter [for] the court." The court then admitted the additional evidence proffered by the IRS, and ruled that a proper notice and demand had been established as of the day of the assessment. On appeal, Purcell insists that the district court erred.

Although the court did not explain why it took the notice and demand issue from the jury, we may speculate that it did so because, in general, "[t]he award of prejudgment interest in a case under federal law is a matter left to the sound discretion of the

7. Purcell also contends that there was a factual dispute as to whether the IRS sent the required notice and demand to his "last known address." See 26 U.S.C. § 6303. The Service "is bound to exercise reasonable diligence in ascertaining the taxpayer's correct address." Wallin v. Commissioner of Internal Revenue, 744 F.2d 674, 676 (9th Cir.1984). Undisputed evidence in the record establishes that the revenue officer who investigated the case was aware only of the address of Purcell's attorney; that the officer made inquiries with the Postal Service, the Department of Motor Vehicles, and the Secretary of State in an effort to obtain information about Purcell; that Purcell's attorney declined to provide Purcell's

home address or social security number to the IRS when requested to do so; that without the social security number, the IRS could not retrieve Purcell's home address from its own records; and that Purcell had previously received IRS correspondence mailed to the same address to which notice was sent, which was that of his attorney. Indeed, Purcell does not contend that he did not in fact receive the notice and demand sent by the government. Under the circumstances, we believe the IRS exercised "reasonable diligence," and that the district court acted properly in directing a verdict in favor of the government on the last known address issue.

 

trial court. Awards of pre-judgment interest are governed by considerations of fairness and are awarded when it is necessary to make the wronged party whole." *United States v. California State Board of Equalization,* 650 F.2d 1127, 1132 (9th Cir.1981), *aff'd mem.,* 456 U.S. 901, 102 S.Ct. 1744, 72 L.Ed.2d 157 (1982). It is clear, however, that this general rule may be trumped by the command of a federal statute. *See Twin City Sportservice, Inc. v. Charles O. Finley & Co.,* 676 F.2d 1291, 1310 (9th Cir.) ("our standard of review is not limited to deciding whether the district court abused its discretion in limiting the interest award because the issue before us here is whether mandatory post-judgment interest ... is dictated by the application of 28 U.S.C. § 1961 to the facts of this case"), *cert. denied,* 459 U.S. 1009, 103 S.Ct. 364, 74 L.Ed.2d 400 (1982).

Here, the trial court was plainly divested of discretion with respect to the government's entitlement to interest by section 6601(e)(2)(A) of the Tax Code. This section provides in part that "[i]nterest shall be imposed ... in respect of any assessable penalty ... only if such assessable penalty ... is not paid within 10 days from the date of notice and demand therefor, and only ... for the period from the date of the notice and demand to the date of payment." *See Johnson v. United States,* 602 F.2d 734, 738–39 (6th Cir.1979) (district court's invocation of equity to alter and to reduce statutorily defined period for accruing of prejudgment interest on penalty under § 6672 was "beyond the court's equitable powers" given "the mandatory language" of section 6601). The district court thus was faced with a binding statutory directive to allow interest to the government as of the time notice and demand was made upon Purcell. The court was not required—indeed, was not permitted—to exercise its discretion regarding the award of interest. All that was required was to establish the date of notice and demand.

The date on which a given event occurs is clearly a matter of fact. Factual questions are ordinarily determined by the trier of fact, in this case the jury. The rule is no different in tax collection and refund suits. *See United States v. Fred A. Arnold, Inc.,* 573 F.2d 605, 606 (9th Cir.1978). We thus conclude that the district court erred in treating the question of notice and demand as a matter to be decided by the court.[8]

Even so, we decline to vacate the district court's award of interest to the government. Purcell has effectively conceded that the computer printout and declaration submitted by the government upon the granting of its motion to reopen establish beyond question that notice and demand was mailed on the day assessment was made against Purcell. It is true that the district court erred in considering this evidence. But the consequence of our correcting this error would be a remand for a new trial on the single issue of notice and demand, a trial whose outcome is clearly foreordained. The government cannot be expected to botch matters a second time; it will simply trot out the evidence that it submitted only belatedly the first time around, and that will be that. No purpose would be served by putting the parties and the district court to the trouble and expense of relitigating this matter.

## VI

The result in this case is a harsh one for Mr. Purcell. As the district court rightly observed, Purcell is more the victim than the culprit here, his motives and actions hardly fitting him for the severe consequences he must be made to endure. Yet Congress has extended liability for the corporation's unpaid withholding taxes to its "responsible" officers and we must take the law as we find it. The judgment of the district court is therefore

**AFFIRMED.**

---

8. We might nonetheless affirm if we could say that the government was in any event entitled to a directed verdict on the basis of the evidence submitted prior to the district court's decision to reopen. We are unable to do so. The state of the evidence prior to reopening can only be characterized as conflicting, presenting a jury issue as to whether notice and demand were sent.