T.C. Summary Opinion 2017-12

UNITED STATES TAX COURT

WILLIAM HENRY PAYNTER AND ELIZABETH A. PAYNTER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21021-15S L.                    Filed March 8, 2017.

William Henry Paynter and Elizabeth A. Paynter, pro sese.

Tyson R. Smith, for respondent.

SUMMARY OPINION

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in effect when the
petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, subsequent section references are to the
(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

This case is before the Court on petitioners' request for review of respondent's determination to sustain a notice of intent to levy to collect petitioners' 2006 Federal income tax liability. The issues for decision are: (1) whether petitioners paid the assessed tax for 2006; (2) whether petitioners are liable for the section 6651(a)(2) addition to tax for failure to timely pay their income tax for 2006; (3) whether petitioners are liable for the section 6654(a) addition to tax for failure to pay estimated income tax for 2006; and (4) whether respondent is estopped from sustaining the proposed levy.

<u>Background</u>

Some of the facts have been stipulated, and we incorporate the stipulation of facts by this reference. Petitioners resided in California when the petition was timely filed.

Petitioners William Henry Paynter (petitioner) and Elizabeth A. Paynter resided in California during 2006. Petitioner was self-employed as an attorney.

---

[1](...continued)
Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioners timely filed their 2006 Form 1040, U.S. Individual Income Tax Return, on October 15, 2007, pursuant to an extension, reporting a tax due of $15,989. Petitioners did not make estimated tax payments for 2006 and did not remit payment when they filed their return. When petitioners' 2006 return was processed on November 26, 2007, the Internal Revenue Service (IRS or respondent) assessed a tax of $16,132, a section 6654(a) addition to tax of $757, and a section 6651(a)(2) addition to tax of $640. Including $815 in interest, the assessed balance as of November 26, 2007, was $18,344.[2] A notice of balance due for 2006 was mailed to petitioners in 2007.[3]

For reasons not apparent from the record, respondent did not send another notice of balance due for petitioners' 2006 assessed balance until August 27, 2014. The notice, sent to petitioners' last known address, reflected an assessed balance of $18,344, an addition to tax for late payment of $3,393, and accrued interest of $5,560.

---

[2]$16,132 (assessed tax) + $757 (sec. 6654(a) addition to tax) + $640 (sec. 6651(a)(2) addition to tax) + $815 (interest) = $18,344 (assessed balance).

[3]Respondent did not provide a copy of this notice. Respondent relied on a certified copy of petitioners' 2006 account transcript. Petitioners also did not provide a copy, but they acknowledged that they had received a notice of balance due for 2006.

Respondent sent petitioners a Letter 11, Notice of Intent to Levy and Notice of Your Right to a Hearing (notice of intent to levy), dated March 6, 2015, at their last known address. The notice of intent to levy reflected the same assessed balance and additions to tax as the notice of balance due sent in 2014 plus accrued interest of $5,990. In response to the notice of intent to levy, petitioners timely filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing, which respondent received on April 1, 2015. On their Form 12153 petitioners asserted that they had paid the tax for 2006.

Upon being assigned to petitioners' case IRS Settlement Officer Smith (SO Smith) reviewed the administrative file and petitioners' account transcript and confirmed that the tax for 2006 had been properly assessed. SO Smith also verified that any requirements of applicable law and administrative procedure had been met.

On May 12, 2015, SO Smith sent petitioners a letter scheduling a telephone collection due process (CDP) hearing for June 23, 2015, and requested that petitioners provide, among other things, a Form 1040 for 2014 within 21 days. The letter indicated that IRS records reflected that the 2014 return had not been filed. The date of the teleconference was rescheduled to June 29, 2015.

On June 29, 2015, SO Smith conducted a telephone CDP hearing with petitioners' representative Robert E. Sullivan. During the hearing SO Smith advised Mr. Sullivan that there was a balance due for 2006. Mr. Sullivan asserted that petitioners had paid the 2006 tax. SO Smith indicated that he could not find a record of payment for 2006. Regarding petitioners' asserted payment, SO Smith informed Mr. Sullivan that account transcripts reflected that petitioners had made the following payments: (1) $21,883, which was applied against their 2008 balance due on December 14, 2009, and (2) $20,811, which was applied against their 2013 balance due on November 24, 2014.

During the CDP hearing Mr. Sullivan also raised the issue that the notice of balance due for 2006 was not sent until 2014. Mr. Sullivan asserted that petitioners' records for 2006 had been destroyed in 2013 in accordance with the IRS' guidance regarding record retention. SO Smith did not provide an explanation for the delay between the initial notice of balance due in November 2007 and the notice of balance due sent in August 2014. SO Smith informed Mr. Sullivan that petitioners had an installment agreement with the IRS for 2005 in effect at the time that the tax for 2006 was assessed and that they later defaulted on the installment agreement. SO Smith requested a copy of petitioners' 2006

Federal income tax return, but Mr. Sullivan asserted that this return was destroyed with the other records for 2006.[4]

SO Smith sent petitioners a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) dated July 27, 2015. The notice of determination stated that the levy was sustained because petitioners "could not raise the underlying liability in the Collection Due Process Hearing" and were not in compliance with filing their 2014 Federal income tax return.

On August 18, 2015, petitioners timely filed a petition disputing the notice of determination. Petitioners asserted in their petition that petitioner had paid the 2006 tax in person at the IRS office in Santa Rosa, California, in either late 2007 or early 2008. Petitioners did not have any records of payment. Petitioners also asserted that in August 2010 their bank, Sonoma Valley Bank, was taken over by the Federal Deposit Insurance Corporation (FDIC).[5] Further, petitioners asserted

---

[4]It is unclear why SO Smith requested a copy of petitioners' 2006 Federal income tax return. The parties stipulated a copy of petitioners' 2006 Form 1040, produced from respondent's records.

[5]The Court notes that on August 10, 2010, Sonoma Valley Bank was closed by the California Department of Financial Institutions and the FDIC was named receiver. All deposit accounts were transferred to Westamerica Bank, the acquiring financial institution.

(continued...)

that in 2013 petitioner paid to have a number of personal and business records shredded, including petitioners' 2006 Federal income tax records and their proof of payment of their 2006 tax.

Respondent provided a certified copy of petitioners' account transcript for 2006. Respondent also provided a declaration by SO Smith and copies of all the documents contained in the administrative file for petitioners' collection due process hearing. Petitioners' 2006 account transcript did not reflect any payments made as of July 12, 2016.

Additionally, respondent provided certified copies of petitioners' account transcripts for 2004, 2005, and 2007 through 2015. The copy of petitioners' 2008 account transcript reflects a payment of $21,883 on December 14, 2009. The copy of petitioners' 2013 account transcript reflects a payment of $20,811 on November

---

[5](...continued)
https://www.fdic.gov/bank/individual/failed/sonoma.html. Generally, under Fed. R. Evid. 201(b), an adjudicative fact can be judicially noticed only if it is (1) generally known within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by sources whose accuracy cannot reasonably be questioned. See Estate of Reis v. Commissioner, 87 T.C. 1016, 1026-1027 (1986). We may take judicial notice on our own, and we may do so at any stage in the proceeding. See Fed. R. Evid. 201(c) and (d).

24, 2014. For 2004 through 2014 petitioners filed timely Federal income tax returns without remittance and later paid their tax as follows:[6]

| Year | Date notice issued | Payment date |
|------|--------------------|--------------| 
| 2004 | --- | Dec. 30, 2005 |
| 2005 | --- | Jan. 12, 2007 |
| 2006 | Nov. 6, 2007; Aug. 27, 2014 | No payment on record |
| 2007 | Nov. 24, 2008 | Dec. 24, 2008 |
| 2008 | Nov. 23, 2009 | Dec. 14, 2009 |
| 2009 | Nov. 22, 2010 | Feb. 28, 2011 |
| 2010 | Nov. 14, 2011 | Jan. 3, 2012 |
| 2011 | Nov. 26, 2012 | Feb. 6, 2013 |
| 2012 | Dec. 9, 2013 | Jan. 21, 2014 |
| 2013 | Nov. 17, 2014 | Nov. 24, 2014 |
| 2014 | Nov. 30, 2015 | Dec. 31, 2015 |

---

[6]Petitioners timely filed requests for extensions to file their returns for 2004 through 2014. Respondent did not impose additions to tax for late filing for these years. Petitioners filed a request for extension to file for 2015 (making the extended due date October 17, 2016), and had not filed their return or made payments as of July 20, 2016. Additionally, petitioners paid their 2005 tax on January 12, 2007, and were issued a notice on May 18, 2015, to pay interest and additions to tax for 2005.

The certified copy of petitioners' account transcript also reflects that an installment agreement for 2005 was entered into on December 27, 2006. The agreement ended on January 1, 2007.

Petitioners provided a copy of a check that they assert was used to pay for the shredding of their 2006 Federal income tax records in 2013, including the record of payment of the 2006 tax. The check, for $1,093, is dated October 8, 2013, and is payable to Integrity Shred.[7]

The parties also stipulated a copy of an advisory from the IRS on the retention of tax records. This advisory states: "The length of time you should keep a document depends on the action, expense, or event which the document records". The advisory discusses how long a taxpayer should retain records for income tax returns in various situations. This advisory also states that if you no longer need your records for tax purposes, "do not discard them until you check to see if you have to keep them longer for other purposes. For example, your insurance company or creditors may require you to keep them longer than the IRS does."

---

[7]The check was drawn on the checking account for petitioner's law office (William H. Paynter, Esq. Attorney at Law). The memorandum on the check is "#37314". Petitioners assert that their 2006 records, including Federal income tax records and proof of payment of their tax, were shredded with a number of other documents from petitioner's law office at the end of 2013.

Petitioners assert that they always timely file their income tax returns without remittance and subsequently pay their tax after they receive a notice of balance due for each year.[8]  Petitioners further assert that they shredded their relevant tax records and proof of payment for 2006 in late 2013, which is beyond the three-year period recommended by the IRS for retaining tax returns (absent allegations of fraud or underreporting of income).

## Discussion

I.    Sections 6330 and 6331

The Secretary is authorized to collect tax by levy upon a taxpayer's property if any taxpayer liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand for payment.  Sec. 6331(a).  Before the Secretary may levy upon the taxpayer's property, the Secretary must first notify the taxpayer of the Secretary's intent to levy.  Id. subsec. (d)(1).  The Secretary must also notify the taxpayer of his or her right to a CDP hearing.  Sec. 6330(a)(1).

If the taxpayer makes a timely request for a hearing, the hearing is conducted by the Appeals Office.  Id. subsec. (b)(1).  At the hearing the taxpayer

---

[8]Petitioner asserted at trial that petitioners do not pay estimated income tax because "I never have and I don't like the process".

may raise any relevant issue relating to the unpaid tax or the proposed collection action. Id. subsec. (c)(2)(A).

Following a CDP hearing the settlement officer must determine whether to sustain the proposed levy. In making that determination, section 6330(c)(3) requires the settlement officer to consider: (1) whether the requirements of any applicable law or administrative procedure have been met; (2) any issues appropriately raised by the taxpayer; and (3) whether the collection actions balance the need for the efficient collection of taxes and the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary. See also Lunsford v. Commissioner, 117 T.C. 183, 184 (2001); Diamond v. Commissioner, 2012 WL 1021284, at *2.

This Court has jurisdiction under section 6330(d) to review the Commissioner's administrative determinations. Where the underlying tax liability is not at issue we review the determination for abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). An abuse of discretion occurs if the Appeals Office exercises its discretion "arbitrarily, capriciously, or without sound basis in fact or law." Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Where the underlying tax liability is properly at issue we review the determination de novo.  Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 181-182.  We need not decide the standard of review in this case since we sustain respondent's determination under either standard of review.[9]  See Estate of Adell v. Commissioner, T.C. Memo. 2014-89, at *11; Golub v. Commissioner, T.C. Memo. 2013-196, at *7.

## II.    Petitioners' 2006 Assessed Tax

An assessed tax may be collected by levy or by a proceeding in court if the levy is made or the proceeding began within 10 years after the date of assessment.  Sec. 6502(a)(1).  If a timely proceeding is commenced in court, the period during which such tax may be collected by levy shall not expire until the liability for the tax is satisfied or becomes unenforceable.  Id. subsec. (a).  Petitioners' 2006 tax

---

[9]See Freije v. Commissioner, 125 T.C. 14, 23, 26-27 (2005) (applying abuse of discretion standard where taxpayer in CDP case challenged IRS' failure to credit overpayments).  Compare Landry v. Commissioner, 116 T.C. 60, 62 (2001) (applying de novo standard where taxpayer challenged application of overpayment credits, reasoning that "the validity of the underlying tax liability, i.e., the amount unpaid after application of credits to which petitioner is entitled * * * [was] properly at issue"), with Kovacevich v. Commissioner, T.C. Memo. 2009-160, 2009 WL 1916351, at *6 & n.10 (applying abuse of discretion standard where taxpayer challenged application of tax payments, reasoning that "questions about whether a particular check was properly credited to a particular taxpayer's account for a particular tax year are not challenges to his underlying tax liability"), and Orian v. Commissioner, T.C. Memo. 2010-234, 2010 WL 4205704, at *6 (same).

was assessed on November 26, 2007, and therefore the period of limitations to collect by levy or court proceeding had not expired at the time of the Notice of Intent to Levy dated March 6, 2015. Thus, SO Smith's decision to sustain the levy for 2006, which was commenced within the prescribed period, had a sound basis in law. See id.; see also Woodral v. Commissioner, 112 T.C. at 23.

Respondent provided copies of the notice of balance due for 2006 and petitioners' account transcript for 2006. Both documents reflect that petitioners had not made any payments for 2006. Petitioners assert that petitioner paid their 2006 assessed tax in person at the Santa Rosa office in either late 2007 or 2008 after they received the notice of balance due for 2006. Petitioners demonstrated a pattern of filing their Federal income tax returns without remittance and later paying their assessed tax for 2004, 2005, and 2007 through 2015, usually after they had received a notice of balance due. But petitioners did not provide any evidence of this payment (outside of petitioner's testimony) to refute respondent's records, such as a receipt or a canceled check. Because petitioners did not provide sufficient evidence to support their assertion that the 2006 tax was paid, and the IRS' records reflect that the tax was not paid, SO Smith did not make a decision arbitrarily, capriciously, or without sound basis in fact or law. Thus, she did not abuse her discretion. See Woodral v. Commissioner, 112 T.C. at 23.

Further, SO Smith properly verified that the requirements of all applicable law and administrative procedure were met in the processing of petitioners' case and that the proposed levy action balances the Government's interest in the efficient collection of tax with petitioners' concern that the collection action be no more intrusive than necessary. See sec. 6330(c)(3); see also Lunsford v. Commissioner, 117 T.C. at 184; Diamond v. Commissioner, 2012 WL 1021284, at *2.

Even if we were to apply the de novo standard of review, we find that petitioners did not prove that they paid their 2006 tax. In general, the Commissioner's determination is presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). In the absence of corroborating evidence, the Court is not required to accept a taxpayer's self-serving testimony. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

Petitioners have not provided sufficient evidence that they paid their 2006 tax. Petitioners assert in their petition that because their bank, Sonoma Valley Bank, was closed by the FDIC in 2010, there are no bank records available to show the 2006 payment. Additionally, the parties stipulated a copy of the 2013

check payable to Integrity Shred, which petitioners assert was hired to have the record of payment for their 2006 tax shredded.[10]

Petitioners did not provide documentation or other evidence outside of petitioner's testimony.  Further, there is nothing in the record suggesting that respondent's records reflecting no payment are incorrect.  See id.  For these reasons, we hold that petitioners have not met their burden of proving that they paid their assessed tax for 2006.  See Rule 142(a); Welch v. Helvering, 290 U.S. at 115; Tokarski v. Commissioner, 87 T.C. at 77.

---

[10]We note that respondent did not object to the admission of evidence that is not in the administrative record, but we discuss its consideration for completeness. There is a circuit split as to whether review of CDP cases is limited to the evidence in the administrative record.  The U.S. Court of Appeals for the Eighth Circuit has held that the trial court should not consider evidence outside the administrative record in CDP cases.  Robinette v. Commissioner, 439 F.3d 455, 462 (8th Cir. 2006), rev'g123 T.C. 85 (2004).  The Court of Appeals for the Ninth and First Circuits agree.  See Keller v. Commissioner, 568 F.3d 710, 718 (9th Cir. 2009), aff'g in part as to this issue T.C. Memo. 2006-166; Murphy v. Commissioner, 469 F.3d 27, 31 (1st Cir. 2006), aff'g 125 T.C. 301 (2005).  The Court of Appeals for the Seventh and Third Circuits have declined to decide the issue.  See Gyorgy v. Commissioner, 779 F.3d 466, 473 n.5 (7th Cir. 2015); Tuka v. Commissioner, 324 F. App'x 193, 195 n.2 (3d Cir. 2006).  The Court of Appeals for the Tenth Circuit has not specifically addressed this issue.  See Jewell v. Commissioner, T.C. Memo. 2016-239, at *4.  We apply the scope of review mandated in the Ninth Circuit, in which an appeal in this case would lie but for sec. 7463(b).  See Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971). However, even if we were to consider the additional evidence submitted and not objected to by respondent, our conclusion that petitioners failed in their burden of proof would not differ.

III.   Additions to Tax

Since we sustain respondent's determination under either standard of review, we will also discuss the imposition of additions to tax under the de novo standard of review.

A.   Section 6651(a)(2) Addition to Tax

Section 6651(a)(2) imposes an addition to tax for failure to pay the amount shown as tax on the taxpayer's return on or before the date prescribed.  The section 6651(a)(2) addition to tax applies only when an amount of tax is shown on a return filed by the taxpayer or prepared by the Secretary.  Sec. 6651(a)(2), (g)(2); Cabirac v. Commissioner, 120 T.C. 163, 170 (2003), aff'd without published opinion, 2004 WL 7318960 (3d Cir. 2004).

Section 7491(c) provides that the Commissioner has the burden of production in any court proceeding with respect to liability for an addition to tax. The Commissioner satisfies this burden of production by coming forward with sufficient evidence that indicates that imposing the addition to tax is appropriate. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  The Commissioner meets the burden of production for an addition to tax under section 6651(a)(2) by providing sufficient evidence that the taxpayer filed a return showing his tax liability for the year at issue.  Wheeler v. Commissioner, 127 T.C. 200, 210

(2006), aff'd, 521 F.3d 1289 (10th Cir. 2008); Glover v. Commissioner, T.C. Memo. 2010-228, 2010 WL 4120987, at \*4.  Respondent met this burden by providing a copy of petitioners' 2006 Form 1040 as filed reflecting a balance due.  See sec. 6651(a)(2); Wheeler v. Commissioner, 127 T.C. at 210; Higbee v. Commissioner, 116 T.C. at 446; Glover v. Commissioner, 2010 WL 4120987, at \*4.

Reasonable cause and the absence of "willful neglect" is a defense to the section 6651(a)(1) and (2) additions to tax.  "[W]illful neglect" means a "conscious, intentional failure or reckless indifference."  United States v. Boyle, 469 U.S. 241, 245 (1985).  "The determination of whether reasonable cause exists is based on all the facts and circumstances."  Ruggeri v. Commissioner, T.C. Memo. 2008-300, 2008 WL 5411919, at \*2.

A taxpayer meets the reasonable cause exception if he demonstrates that he "exercised ordinary business care and prudence" in trying to pay his tax and either could not pay or would suffer "undue hardship" if he paid his tax when due.  Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  This determination is factual, and the burden of proof is on the taxpayer.  Merriam v. Commissioner, T.C. Memo. 1995-432, 1995 WL 522813, at \*11, aff'd without published opinion, 107 F.3d 877 (9th Cir. 1997).  "Undue hardship" must be more than an "inconvenience" to the

taxpayer; it requires that he had the "risk of a substantial financial loss resulting from making the tax payment on time." Id. 1995 WL 522813, at *13; sec. 1.6161-1(b), Income Tax Regs.

Petitioners filed a Form 1040 for 2006 reflecting tax due and admit that they did not send in estimated tax payments, nor did they remit payment with their return. Thus, the addition to tax will be upheld unless petitioners can show reasonable cause for this failure to timely pay their 2006 tax. See sec. 6651(a)(2), (g)(2); Cabirac v. Commissioner, 120 T.C. at 170.

Petitioner asserted at trial that he does not make estimated tax payments because of his dislike of the process, and petitioners usually do not pay their tax for a given year until after they receive a notice of balance due. Petitioners' failure to make estimated tax payments because petitioner dislikes the process is not an exercise of ordinary business care and prudence in complying with the requirement to pay their tax due on or before the due date for their return; instead this conscious failure is willful neglect. See Boyle, 469 U.S. at 246. Further, petitioners have not asserted that they could not pay their tax or would suffer undue hardship if they paid their income tax at the time of filing their 2006 return. See Ruggeri v. Commissioner, 2008 WL 5411919, at *2; Merriam v. Commissioner, 1995 WL 522813, at *11; sec. 1.6161-1(b), Income Tax Regs.; sec.

301.6651-1(c)(1), Proced. & Admin. Regs.  Thus, petitioners have not shown

reasonable cause and do not have a valid defense against the section 6651(a)(2)

addition to tax.

B.    Section 6654(a) Addition to Tax

Section 6654(a) imposes an addition to tax on a taxpayer who underpays his

estimated income tax unless an exception applies.  See sec. 6654(e).  The section

6654(a) addition to tax is determined by applying the underpayment rate

established under section 6621 to the amount of the underpayment[11] for the period

of the underpayment.[12]

If the taxpayer challenges the section 6654(a) addition to tax, the

Commissioner must introduce evidence to prove that the taxpayer had an

obligation to make estimated tax payments for the year at issue, by showing

whether the taxpayer filed a return for the prior year and if so, the amount of tax

shown on that return.  Secs. 6654(d)(1)(B), 7491(c); Wheeler v. Commissioner,

---

[11]"[A]mount of the underpayment" means the excess of the required installment over the amount, if any, of the installment paid on or before the due date for the installment.  Sec. 6654(b)(1).

[12]The period of the underpayment runs from the due date for the installment to the earlier of the 15th day of the 4th month following the close of the taxable year or with respect to any portion of the underpayment, the date on which such portion is paid.  Sec. 6654(b)(2).

127 T.C. at 212. But if the taxpayer does not challenge an addition to tax by assigning error to it, the Commissioner need not plead the addition to tax and has no obligation under section 7491(c) to produce evidence that the addition to tax is appropriate. See Rule 34(b)(4); Swain v. Commissioner, 118 T.C. 358, 365 (2002). Petitioners did not challenge the addition to tax and admit that they did not make estimated tax payments for 2006. Therefore, the addition to tax is appropriate unless an exception applies.[13] See Rule 34(b)(4); Swain v. Commissioner, 118 T.C. at 365.

This addition to tax under section 6654 is mandatory unless the taxpayer can place himself under one of the computational exceptions provided in that section. Grosshandler v. Commissioner, 75 T.C. 1, 21 (1980); Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960). Section 6654(e) provides two mechanical exceptions to the applicability of the section 6654 addition to tax.[14] First, the addition is not applicable if the tax shown on the taxpayer's return for

---

[13]If petitioners had challenged the sec. 6654(a) addition to tax, respondent met the burden of production because he provided a certified copy of petitioners' 2005 account transcript reflecting that they had an obligation to make estimated tax payments for 2006. See sec. 6654(a), (d)(1); Wheeler v. Commissioner, 127 T.C. 200, 212 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008).

[14]Sec. 6654(e)(3) provides for limited situations in which the Secretary can waive the addition to tax, none of which is applicable here.

the year in question (or, if no return is filed, the taxpayer's tax for that year), reduced by any allowable credit for wage withholding, is less than $1,000. Sec. 6654(e)(1). Second, the addition to tax is not applicable if the taxpayer's tax liability for the preceding taxable year was zero. Sec. 6654(e)(2).

On the basis of the record, neither of these mechanical exceptions applies. Thus, petitioners are liable for the section 6654 addition to tax. See sec. 6654(a), (e); Grosshandler v. Commissioner, 75 T.C. at 21; Estate of Ruben v. Commissioner, 33 T.C. at 1072.

IV.    Estoppel

Petitioners assert that the Court should apply equitable estoppel against respondent because of their reliance on the IRS' advisory regarding retention of tax records and respondent's delay in attempts to collect the 2006 liability. Petitioners assert that they relied on the IRS' advisory and destroyed their tax and payment records for 2006 and thus no longer have records to prove that they paid the tax.

Equitable estoppel is a judicial doctrine that requires finding a party relied on another party's representations and suffered a detriment because of that reliance. Hofstetter v. Commissioner, 98 T.C. 695, 700 (1992). Equitable estoppel is applied against the Commissioner "with utmost caution and restraint"

and "such situations must necessarily be rare, for the policy in favor of an efficient collection of the public revenue outweighs the policy of the estoppel doctrine in its usual and customary context." Schuster v. Commissioner, 312 F.2d 311, 317 (9th Cir. 1962), aff'g in part, rev'g in part 32 T.C. 998 (1959); see also Kronish v. Commissioner, 90 T.C. 684, 695 (1988); Estate of Emerson v. Commissioner, 67 T.C. 612, 617 (1977).

In order to invoke the doctrine of equitable estoppel against the Commissioner, a taxpayer must satisfy all the traditional elements of an equitable estoppel claim: (1) the Government knew the facts of the taxpayer's situation; (2) the Government intended that its conduct be acted on or acted so that the taxpayer had a right to believe it was so intended; (3) the taxpayer was ignorant of the facts; and (4) the taxpayer relied on the Government's conduct to his injury. Baccei v. United States, 632 F.3d 1140, 1147 (9th Cir. 2011).

In addition to the traditional elements of equitable estoppel, the Court of Appeals for the Ninth Circuit requires that the party seeking to apply the doctrine against the Government prove affirmative misconduct. Id.; see also Purcell v. United States, 1 F.3d 932, 939 (9th Cir. 1993). Affirmative misconduct by the Government must go beyond mere negligence and requires an affirmative misrepresentation or affirmative concealment of a material fact, such as "a

deliberate lie or a pattern of false promises." Baccei, 632 F.3d at 1147; Purcell, 1 F.3d at 939.  Affirmative misconduct is a threshold issue to be decided before determining whether the traditional elements of equitable estoppel are present. Purcell, 1 F.3d at 939.

Petitioners assert that they relied on the IRS' advisory regarding retention of tax records when they decided to shred their payment record for 2006.  Petitioners have not asserted nor provided evidence that respondent engaged in affirmative misconduct, such as deliberate lies or making false promises.  See Baccei, 632 F.3d at 1147; Purcell, 1 F.3d at 939.  Because petitioners did not establish affirmative misconduct, we do not address whether the traditional elements of equitable estoppel are present.  See Purcell, 1 F.3d at 939.  Accordingly, respondent is not estopped from sustaining the proposed levy against petitioners.

We do not condone respondent's failure to pursue collection action between November 2007 and August 2014.  Congress has made clear by statute that the IRS has 10 years from the date of assessment to collect a tax, and this collection is within that timeframe.  Sec. 6502(a)(1).  However, respondent did not provide any

explanation for the failure to pursue collection during this intervening time. Without doubt this delay has created certain hardships for petitioners.[15]

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.

---

[15]We further note that petitioners have not sought other remedies in this proceeding such as abatement of interest.