**SOUTHTRUST BANK OF FLORIDA, N.A., a National Banking Corporation, Plaintiff,**

v.

**Harold S. WILSON, Mary Ellen Wilson, and United States of America, Defendants.**

**No. 96–1046–CIV–T–17A.**

United States District Court, M.D. Florida, Tampa Division.

July 9, 1997.

L. Geoffrey Young, Dale W. Cravey, Gaynor, Decker, Young, Malchon, Dickson, Schumaker & Bernstein, Tampa, FL, for Plaintiff.

Harold S. Wilson, Harold S. Wilson, P.A., Clearwater, FL, pro se.

Harold S. Wilson, Harold S. Wilson, P.A., Clearwater, FL, for Mary Ellen Wilson.

Mary Apostolakos Hervey, U.S. Dept. of Justice, Washington, DC, for U.S.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

KOVACHEVICH, Chief Judge.

This cause is before the Court on the following motions and responses:

1. Motion for Summary Judgment by Defendant, UNITED STATES OF AMERICA, (Docket No. 15) and memorandum in support (Docket No. 16), filed January 14, 1997.

2. Motion for Summary Judgment of Interpleader by Plaintiff, SOUTHTRUST BANK OF FLORIDA, N.A., (Docket No. 17) and memorandum in support (Docket No. 18), filed January 17, 1997.

3. UNITED STATES OF AMERICA's Response to Plaintiff's Motion for Summary Judgment of Interpleader (Docket No. 19), filed January 31, 1997.

4. Response to UNITED STATES OF AMERICA's Motion for Summary Judgment and Motion for Summary Judgment by Defendants, HAROLD S. WILSON and MARY ELLEN WILSON, (Docket No. 20), filed February 3, 1997.

**1.** The Court has jurisdiction under 28 U.S.C. §§ 1331, 1346.

5. UNITED STATES OF AMERICA's Response to HAROLD and MARY ELLEN WILSON's Motion for Summary Judgment (Docket No. 21), filed February 10, 1997.

## I. STATEMENT OF THE CASE

Plaintiff, SouthTrust Bank of Florida, N.A. ("SouthTrust") brought this action for interpleader and declaratory relief under Rule 22, Federal Rules of Civil Procedure.[1] SouthTrust requests that the Court remove SouthTrust from further litigation by discharging its liability and reimbursing SouthTrust for attorney's fees and costs.

On March 27, 1989, the Internal Revenue Service ("IRS") assessed Harold Wilson $33,477.38 under 26 U.S.C. § 6672. On June 15, 1989, Harold and Mary Ellen Wilson (the "Wilsons") assigned a U.S. Treasury Note SER C–97, Cusip 912827VN9 (the "Security") with a par value of $50,000 to Ameribank[2] as security described in a Bond to Stay Collection of Assessment, with the caveat that "neither the securities described nor the proceeds of their sale or redemption [shall] be paid over to the undersigned [the Wilsons] without the express written consent of the Internal Revenue Service." SouthTrust Complaint, Exhibit A. On October 19, 1989, Ameribank, the Internal Revenue Service, Harold Wilson, and Mary Ellen Wilson entered into an Escrow Agreement. The agreement appointed Ameribank as the escrow agent whose responsibilities were governed by the Escrow Agreement.

According to the terms of the Escrow Agreement, either the IRS or the Wilsons could direct Ameribank to file an action in interpleader to resolve a disagreement about the Agreement. However, the Wilsons and the IRS first must attempt, in good faith, to resolve their disagreements. Methods of resolution include: "reducing all disagreements to writing, submitting each party's views in writing to the other, conferring telephonically and at the offices of IRS if so requested by IRS, and otherwise communi-

**2.** Ameribank was acquired by Southtrust in 1993. Southtrust assumed Ameribank's responsibilities.

cating to resolve any disagreement." South-Trust Complaint, Exhibit B. If resolution of the problem was not completed in ninety (90) days, either party could ask Ameribank to proceed with the interpleader action.

On November 22, 1989, Harold Wilson brought a refund action in this Court against the United States of America (the "United States") to challenge the IRS assessment. (Case No. 89–1576–CIV–T–15C). On February 21, 1992, judgment was entered against Mr. Wilson for $33,477.38, plus interest, minus the amount of previous payments made by Mr. Wilson. Mr. Wilson then appealed to the Eleventh Circuit Court of Appeals, and on March 12, 1993, the Eleventh Circuit affirmed the District Court's ruling.

On May 28, 1993, Mr. Wilson sent a check for $36,258.49 to the IRS to satisfy the judgment. In an attached letter, Mr. Wilson estimated that he owed $4,781.11 in interest. He calculated this interest based on the period beginning on the judgment date (February 21, 1992) and ending on the payment date (May 28, 1993). Mr. Wilson then asked the IRS to notify Ameribank that the Security could be returned to Mr. Wilson.

On July 30, 1993, an IRS Revenue Officer notified Mr. Wilson that interest is calculated from the date of assessment (March 27, 1989) until the date of payment. Therefore, Mr. Wilson still owed $3,308.79 according to the IRS. On August 5, 1993, Mr. Wilson sent the IRS Revenue Officer a letter asserting that pre-judgment interest merges into the final judgment. Mr. Wilson reiterated that his previous payment on May 28 satisfied the judgment.

On September 23, 1993, the IRS sent a Final Notice (Notice of Intention to Levy) to Mr. Wilson indicating that he still owed $3,308.78 plus $7,654.95 in accumulated interest. Subsequently, on October 4, 1993, Mr. Wilson sent a check for $3,308.79 "as full payment and satisfaction of any sums that may be due" to the IRS. United States Memorandum in Support, Exhibit G. On December 28, 1993, the IRS notified Mr. Wilson of the receipt of his check, but explained that Mr. Wilson still owed $7,766.78 (calculated to January 15, 1994).

On November 2, 1994, the IRS notified Ameribank (now SouthTrust) that Mr. Wilson still owed $8,284.81 (calculated to November 20, 1994). The IRS directed the escrow agent to reduce the Security to cash and pay the balance. SouthTrust then notified the Wilsons that the Security would be liquidated unless the Wilsons proved that they already paid the balance.

## II. STANDARD OF REVIEW

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must state the basis for its motion and must identify the portions of the record that show the absence of a genuine issue of material fact. The burden can be discharged by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the moving party meets its burden, the nonmoving party must go beyond the pleadings and designate specific facts in his affidavits, or in the depositions, answers to interrogatories, and admissions, that show a genuine issue of material fact. *Cheatwood v. Roanoke Indus.,* 891 F.Supp. 1528, 1532 (N.D.Ala.1995), *citing Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

Issues of fact are genuine "only if a reasonable jury considering the evidence presented could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Material facts are those that would affect the outcome of the trial. *Id.* at 248, 106 S.Ct. at 2510. In determining whether a material fact exists, the court must consider all evidence in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.,* 708 F.2d 655, 656 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First Nat'l Bank of Mt. Pleasant,* 595 F.2d 994, 996–97 (5th

Cir.1979), *quoting Gross. v. Southern R.R.,* 414 F.2d 292 (5th Cir.1969).

## III. ANALYSIS

### A. The Validity of the Interpleader Action

SouthTrust correctly brought this interpleader action based on its responsibilities under the Escrow Agreement. Even if the Agreement did not stipulate to the interpleading of the United States and the Wilsons, SouthTrust could validly bring an action under Rule 22 of the Federal Rules of Civil Procedure. "Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability." Fed. R.Civ.P. 22(1). Either the United States or the Wilsons could sue SouthTrust based on its agency relationship to both parties. Ultimately, SouthTrust could be subjected to double or multiple liability if both parties were not interpled.

No genuine issue of material fact exists relative to SouthTrust's adherence to the Escrow Agreement's interpleader procedure. The United States agrees that SouthTrust appropriately filed the interpleader action. In addition, the Wilsons do not challenge the validity of the interpleader action. All parties agree that the United States and the Wilsons have competing claims over the Security that SouthTrust holds as escrow agent.

Under the terms of the Escrow Agreement, the United States and the Wilsons were required to communicate their respective disagreements to one another and faithfully try to resolve each disagreement. If ninety (90) days elapsed without resolution, either party could direct SouthTrust in writing to file an action in interpleader. After SouthTrust notified the IRS that the Wilsons disagreed with the interest assessment, the IRS was put on notice about the disagreement.

The amount of communication and cooperation between the parties is not clear from the record. However, according to the correspondence between all parties, each side knew about the conflicting demands. The IRS properly directed SouthTrust to file this interpleader action after the ninety (90) day period expired.

■ In their answer to the complaint, the Wilsons deny that SouthTrust is an innocent stakeholder. The Wilsons allege that SouthTrust became an adversary because SouthTrust withheld an interest payment on the bond in May, 1996. However, this alleged breach of contract demonstrates the necessity of the interpleader action. SouthTrust did not know if the relinquishment of the interest payment would adversely affect the IRS claim.

The Wilsons do not claim that SouthTrust diverted the interest payment into its own coffers nor do they claim that the IRS received the payment. Since SouthTrust did not know which party should receive the Security, it followed the procedures listed in the Escrow Agreement.

■ Therefore, the Court grants SouthTrust's Motion for Summary Judgment of Interpleader. The Court orders SouthTrust to deposit the Security into the Court's registry pursuant to Rule 67 of the Federal Rules of Civil Procedure and Local Rule 4.16. Additionally, "courts may enter an order relieving the interpleader plaintiff of further responsibility and enjoin the interpleaded defendants from bringing further action against that plaintiff with regard to the disputed funds." *Kurland v. United States,* 919 F.Supp. 419, 421 (M.D.Fla.1996). "It is a generally accepted principle that a disinterested stakeholder filing an action in interpleader may be dismissed from the case, discharged from further liability, and, in the court's discretion, awarded attorneys' fees and costs." *Id.* The defendants are required to interplead, and SouthTrust shall be removed from the litigation. The Court enjoins the defendants from suing SouthTrust on any matter relating to the defendants' adverse claims. Further, SouthTrust will transfer the withheld interest payments to the Wilsons in accordance with the Escrow Agreement only if the Escrow Amount will cover the assessment balance.

B. The Adverse Claims of the Wilsons and the United States

The United States' and the Wilsons' Motions for Summary Judgment relate to the amount of interest levied on the IRS assessment. The defendants dispute whether the District Court judgment has been satisfied.

■ The Wilsons claim in their Answer that prejudgment interest merges into the final judgment, and therefore, the IRS cannot calculate interest before the final judgment. However, interest will run from the date the tax liability arises until the date when the liability is paid. *See* 26 U.S.C. § 6601(a) and (b)(5). Section 6601 of the Internal Revenue Code provides in part:

> If any amount of tax imposed by this title ... is not paid on or before the last date prescribed for payment, interest on such amount at the underpayment rate established under section 6621 shall be paid for the period from such last date to the date paid.

26 U.S.C. § 6601(a). Interest is imposed from the date of the notice and demand to the date of payment. *See* 26 U.S.C. § 6601(e)(2)(A). Due to the statutory mandate, a court only has to determine the date of notice and demand. *Purcell v. United States*, 1 F.3d 932, 943 (9th Cir.1993). The taxpayer does not avoid interest by posting a bond and litigating its claim. *See United States v. American Ins. Co.*, 18 F.3d 1104, 1111 (3d Cir.1994). To hold otherwise would allow any lapse of time between an assessment and payment to work to the taxpayers advantage because interest would riot accrue while litigating. *Holland v. United States*, 873 F.2d 1321, 1322 (9th Cir.1989); *see Causey v. United States*, 683 F.Supp. 1381, 1387 (M.D.Ga.1988) (using sections 6601 and 6621 to award prejudgment interest running from the date of notice and demand to the date of judgment). "The tax code does not contemplate the interest-free use of government funds." *Id.* If the Wilsons had paid the liability upon demand, no interest would have accrued. *See American Ins. Co.*, 18 F.3d at 1111.

■ The Wilsons claim that they only owe interest from the date of judgment until the date of payment. However, after review of statutory language and judicial interpretations, this position is clearly erroneous. The date of notice and demand is March 27, 1989. Mr. Wilson stayed collection pursuant to section 6672(b). If the Court adopts a rule tolling the accrual of prejudgment interest, the Wilsons will have effectively used interest-free government funds.

The Wilsons claim that the Bond and Escrow Agreements only require payment of $33,705.88 or less depending on the judgment. The Wilsons interpret the Bond and Escrow Agreements as only satisfying interest payments if no suit was timely instituted.[3] If the amount stayed ($33,705.88) was paid to the IRS upon notice of final judgment, the Security could be remitted back to the Wilsons. The Wilsons essentially argue that the bond does not relate to the final judgment amount.

Even if the Bond and Escrow Agreements do not secure payment of accrued interest, the Wilsons must still satisfy the District Court judgment. The judgment added interest to the assessment balance, and the interest runs from the date of notice and demand. Therefore, the Wilsons still must satisfy the balance of the assessment. Once the Wilsons pay the assessment balance including accrued interest, the Court will release the Security. The Escrow Agreement gives the Wilsons fifteen (15) days after final judgment to pay the assessed amount before the Escrow Amount will be liquidated to pay the balance. Therefore, the Court will give the Wilsons fifteen (15) days after resolution of the attorneys' fees and costs issue to pay the IRS the appropriate assessment before liquidating the Security.

■■ The Wilsons also claim in their Answer that the IRS accepted final satisfaction of the assessment when the IRS cashed the 1993 check for $3,309.78. Mr. Wilson sent a letter with that check indicating that the check was for final payment and satisfaction. However, the acceptance of payment does not automatically create a final settlement.

---

3. No party argues that the refund suit was not correctly pursued.

*See Bowling v. United States,* 510 F.2d 112, 113 (5th Cir.1975). A final settlement or compromise did not result here because the appropriate statutory measures were not followed. *See Klein v. Commissioner,* 899 F.2d 1149, 1152–53 (11th Cir.1990).

## C. Attorneys' Fees and Costs

SouthTrust asks the Court to reserve jurisdiction in awarding its reasonable attorneys' fees and costs related to this action. Under paragraph 7 of the Escrow Agreement, the Wilsons are:

[S]olely liable for indemnification of all costs, including reasonable attorneys' fees, in connection with such interpleader actions, and [Ameribank] shall be fully protected in suspending all or part of its activities under this Escrow Agreement until a final judgment in the interpleader action is received. IRS shall not be liable or otherwise responsible for indemnification of [Ameribank].

SouthTrust Complaint, Exhibit B. The plain language of the Agreement provides clear guidance to the responsibilities of the parties. The Wilsons do not challenge these facts as listed in the pleadings. Therefore, the Wilsons shall provide SouthTrust's reasonable attorneys' fees and costs related to this interpleader action once a reasonable amount is identified.

However, the Court must decide how the Wilsons will pay for these fees and costs. If a plaintiff initiates the interpleader as a disinterested stakeholder, attorneys' fees and costs are generally awarded. *See Prudential Ins. Co. of America v. Boyd,* 781 F.2d 1494, 1497 (11th Cir.1986). The fees and costs may be taxed against the interpleader fund. *See id.* However, attorneys' fees cannot be paid from an interpleader fund when it goes to satisfy a federal tax lien. *See Cable Atlanta, Inc. v. Project, Inc.,* 749 F.2d 626, 626 (11th Cir.1984).

The Wilsons have historically not used the Escrow Amount to pay their liabilities related to this matter. They may pay for the fees and costs from an outside source. Upon full payment to the United States, the Wilsons may receive the Security from the Court's registry. If the Security is liquidated upon the Wilson's failure to pay, the payment of attorneys' fees and costs cannot affect the amount given to the IRS. If the liquidated Security satisfies the assessment balance, the remaining amount will go to SouthTrust. The Court reserves jurisdiction regarding the amount and source from where SouthTrust's attorneys' fees and costs will be paid. Accordingly, it is ORDERED:

1) Plaintiff SouthTrust's Motion for Summary Judgment of Interpleader be **GRANTED;**

2) SouthTrust will deliver the Security to the Court's registry and relinquish the Security's interest payments to the Wilsons only if the Escrow Amount will cover the Wilsons liabilities. SouthTrust will notify the appropriate agent that all future interest payments on the Security will be directed to this Court;

3) The Court orders the **discharge** of Plaintiff from this action and **enjoins** Defendants from further action against Plaintiff in connection with the disputed funds, upon the deposit in accordance with this order.

4) Defendant United States' Motion for Summary Judgment be **GRANTED IN PART;**

5) Defendants Harold and Mary Ellen Wilson's Motion for Summary Judgment is **DENIED;**

6) Defendants Harold and Mary Ellen Wilson must pay the assessment balance, including interest, within fifteen (15) days after the final resolution of the issue of attorneys' fees and costs. If the payment is not made, the Court will liquidate the Security and satisfy the assessment balance accordingly;

7) The Court reserves jurisdiction on the issue of Plaintiff's attorneys' fees and costs if the parties fail to resolve the issue amongst themselves; and

8) The Clerk of the Court be **directed** to enter judgment accordingly.