107 F.3d 877
 Pens. Plan Guide (CCH) P 23936E
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 Thomas COSGROVE, husband, on his own behalf and on behalf of
all others similarly situated; Matilda June Cosgrove, wife,
on her own and on behalf of all others similarly situated,
Plaintiffs-Appellants,
v.
CIRCLE K CORPORATION, a Texas corporation; Circle K
Convenience Stores, Inc., a Texas corporation; Fred Hervey;
the Fred Hervey Interests Employees Retirement Plan; Karl
Eller, husband; Joan Eller, wife, Defendants-Appellees. (Two cases)
 Nos. 96-15164, 96-16148.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 11, 1997.
Decided Feb. 27, 1997.
 Before: GOODWIN, LEAVY, and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This appeal arises out of an action brought pursuant to the Employees Retirement Income Security Act of 1974 ("ERISA") by Thomas Cosgrove and other participants ("Cosgrove") in the Fred Hervey Interests Employees' Benefit Plan ("Plan"). Pursuant to 29 U.S.C. § 1109(a),[1] Cosgrove brought this action against the Circle K Corporation, Circle K Convenience Stores, Inc. ("Circle K"), Fred T. Hervey ("Hervey"), and Karl Eller ("Eller"), for losses to the Plan, and for profits obtained by Circle K, arising from the allegedly unlawful sale of Plan assets to Circle K in 1986.
 
 
 3
 Cosgrove appeals from the district court's judgment following a bench trial arguing, among other things, that the 1986 sale by the Plan of its fee in ninety-one properties to Circle K violated ERISA's prohibited transaction provision, 29 U.S.C. § 1106, because the Plan did not receive "adequate consideration" as required by 29 U.S.C. § 1108(e). No. 96-15164. Cosgrove also appeals from the district court's award of costs to Circle K. No. 96-16148. We affirm in both appeals.
 
 1. The Sale of the Plan Assets to Circle K
 
 4
 ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A) provides that any transaction "between the plan and a party in interest" is a "prohibited transaction" except as provided in ERISA § 408(e), 29 U.S.C. § 1108(e). A "party in interest" is defined as "an employer any of whose employees are covered by such plan." ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C). Under these provisions, the purchase of the Plan assets by Circle K would be prohibited unless it satisfied the requirements of § 1108(e).
 
 
 5
 Section 1108(e) provides in relevant part that "[s]ections 406 or 407 shall not apply to the acquisition or sale by a plan of ... qualifying employer real property ... if such acquisition, sale, or lease is for adequate consideration." "Qualifying employer real property" is defined as "real property ... which is leased to an employer of employees covered by the plan, or to an affiliate of such employer." ERISA § 407(b)(2), 29 U.S.C. § 1107(d)(2). "Adequate consideration" is defined as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." ERISA § 3(19)(B), 29 U.S.C. § 1002(18)(B).
 
 
 6
 Cosgrove contends that once Circle K had purchased First Circle, its purchase of the Plan's fee simple in the ninety-one Stores violated § 1108(e) because Circle K did not pay adequate consideration for qualifying employer real property. Cosgrove also claims that the Plan's trustees' violated their fiduciary duties when they agreed to the sale. We disagree.
 
 
 7
 The agreement by which the Plan obtained fee simple in the properties was negotiated between the Plan and First Circle in 1973. At that time, the property was encumbered by a mortgage payable over twenty-five years and a long-term lease of the stores to Circle K. First Circle sold to the Plan, for the payment of $1,000, a fee in the ground underneath the seventy-nine stores.[2] The Plan then leased that fee back to First Circle for $100 per year for the initial twenty-five year term of the Circle K-First Circle lease. At the termination of the twenty-five year term, if Circle K did not renew its leases, the Plan would have the properties in unencumbered fee simple. If Circle K did renew its lease, First Circle would assign to the Plan its interest in the Circle K lease including the right to receive $523,962 yearly rent until 2013.
 
 
 8
 Because the Plan purchased its fee in the stores for $1000 and received annual rent of $100, the district court found that the Plan received adequate consideration and that the agreement was at least as favorable as those an unrelated third party could have received in an arm's-length transaction. Because none of the findings of the district court are clearly erroneous, we see no error in the district court's legal conclusion that ERISA § 414(c)(2), 29 U.S.C. § 1114(c)(2), the so-called transition rule, does not apply to this 1973 agreement.
 
 
 9
 In 1984, pursuant to the Brett litigation between the Plan and the participants, Montandon appraised the Plan's interests. The appraisal was based on an income-stream-plus-reversion methodology. This method ascertained the 1984 discounted value of the $100 per year ground rental until 1998, the $523,962 annual payment to the Plan from 1998 to 2013 (assuming the probability that Circle K would renew its lease), and the value of the unencumbered fee upon expiration of the leases in 2013. The reasonableness of this appraisal and its methodology is evidenced by the parties' Brett settlement of 1984.
 
 
 10
 In 1986, having purchased First Circle, Circle K purchased the Plan's encumbered fee for an amount appraised according to the same income-stream method used in 1984. The plaintiff's expert, however, testified that the properties should have been appraised as if those encumbrances did not exist. The district court found that the plaintiffs' expert's opinion did not accurately reflect the value of the Plan's interest.
 
 
 11
 The plaintiffs also contend that the 1986 appraisal was deficient because it did not consider the unique value of the properties to Circle K in light of their possible inclusion in new sale and leaseback financing. While it is true that Circle K was motivated to purchase the properties in order to obtain capital through new sales and leasebacks, the evidence supports the district court's finding that Circle K had other stores available for this purpose. Additionally, the Plan was also motivated to sell the properties promptly for tax reasons and because the prospect for finding another buyer of all the properties was uncertain. The district court found that the Plan was under no less compulsion to sell its interest in the ninety-one stores than Circle K was under compulsion to buy.
 
 
 12
 The district court's finding of fact that the plan received adequate consideration was not clearly erroneous. Thus under Fed.R.Civ.P. 52 it may not be set aside. We see no basis for overturning its conclusion of law that the requirements of § 1008(e) were satisfied. The district court did not err in holding that although the trustees had breached the Brett Agreement by failing to present the 1986 appraisal to the Brett court for evaluation, the breach was harmless since the Plan received adequate consideration.
 
 
 13
 We find no merit to any of Cosgrove's other assertions of error.
 
 2. Award of Costs to Defendants
 
 14
 Circle K and Hervey moved for attorneys' fees and costs pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1). Section 1132(g)(1) provides in relevant part that "[i]n any action under this title ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Defendants presented a Bill of Cost pursuant to Rule 54(d) and pursued their attorney's fees under § 1132(g)(1). The court granted, with some modification, the costs claimed by defendants. In a separate ruling the district court denied the Circle K defendants' request for attorneys' fees under § 1132 specifically discussing the ERISA § 1132(g)(1) discretionary criteria articulated in Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 452-53 (9th Cir.1980).
 
 
 15
 There is no Ninth Circuit authority on whether the Hummell criteria for determining a fee under § 1132(g)(1) is applicable to costs. We have, however, stated:
 
 
 16
 [W]e must determine whether either party is entitled to an award of costs or fees--either for proceedings below or for this appeal. Section 502(g) of ERISA provides that "[i]n any action under [ERISA] ... the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Both parties have requested an award of fees pursuant to this provision.
 
 
 17
 In its final judgment, the district court ordered the parties to bear their own fees and costs, and neither party has offered any argument to suggest why that decision may have constituted an abuse of discretion. Accordingly, we affirm the district court's denial of any such award.
 
 
 18
 For purposes of determining whether to award fees and costs on appeal, we consider the same five factors identified [in Hummell ] as relevant to an award of fees in the district court.... Under these circumstances, we decline to award fees or costs to either party.
 
 
 19
 Williams v. Caterpillar, Inc. 944 F.2d 658, 667-68 (9th Cir.1991) (citations omitted). This statement supports Cosgrove's contention that a district court's award of costs in an ERISA action is subject to the specific discretionary criteria articulated in Hummell.
 
 
 20
 We note, however, that Cosgrove failed to present this objection to the district court. We need not consider any issue raised for the first time on appeal. Moreno Roofing Co., Inc. v. Nagle, 99 F.3d 340, 343 (9th Cir.1996). In any event, it is undisputed that an award of costs, whether under 54(d) or § 1132(g)(1), is discretionary. In the instant appeal, the district court was aware of the discretionary factors to be considered under ERISA. Although it did not discuss Hummell or § 1132(g)(1) in its order granting costs, Cosgrove has failed to show that the district court abused its discretion in awarding costs under the Hummell standard.
 
 
 21
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate[.]
 
 
 [2]
 At various other times, Circle K conveyed to the Plan a fee interest in an additional 12 stores, subject to Circle K's leases