107 F.3d 877
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Vicente Gonzales JARAMILLO, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70718.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 13, 1997.*
Decided Feb. 28, 1997.
 
 Before: BRUNETTI, FERNANDEZ and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Vicente Gonzales Jaramillo, a Philippines citizen, petitions for review of the decision of the Board of Immigration Appeals ("BIA"), which affirmed the Immigration Judge's ("IJ") denial of his asylum application.
 
 
 3
 Jaramillo was the owner of a successful construction company. Beginning in October 1990, Jaramillo received monthly requests for 10,000 pesos in a letter bearing a hammer and sickle, presumably from the New People's Army (the "NPA"), a communist guerilla organization. At first he failed to respond to the requests. In December 1990, his construction site was vandalized and two of his employees were beaten. In January 1991, Jaramillo was confronted by two men who demanded 10,000 pesos a month, and he began to comply with the requests. The group's demands doubled every four months. When the demand increased to 40,000 pesos, Jaramillo did not make the payment. The NPA contacted Jaramillo by phone in October 1991, and he told the group he could no longer afford to pay.
 
 
 4
 Jaramillo sought help from a friend in the Philippine constabulary, who provided security for the completion of the construction project and a bodyguard for Jaramillo personally. At his friend's advice, Jaramillo moved his family to a new area. Jaramillo testified that he also learned he was on the NPA's hit list and that the NPA planned to kidnap his daughter. It is unclear from Jaramillo's testimony whether anything transpired with the NPA after October 1991. In October 1992, he came to the United States on a visitor visa. His family remains in the Philippines.
 
 
 5
 To be entitled to asylum, Jaramillo must establish that he experienced past persecution or that he has a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group or political opinion. 8 U.S.C. § 1101(a)(42). The BIA's determination will be reversed only if the evidence was such that a reasonable factfinder would have to conclude otherwise. See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). We agree with the BIA that Jaramillo did not establish the requisite nexus between the NPA's extortion and accompanying threats and one of the five protected grounds.
 
 
 6
 The political opinion of the victim, not the persecutor, is of consequence in determining asylum eligibility. Id. at 482. In this case, there is no evidence that the NPA had any knowledge of Jaramillo's political opinion; rather, it appears the NPA was only concerned with the size of his bank account. Documentary evidence in the administrative record indicates that the NPA typically does not target individuals on account of their political opinion, but rather on account of their wealth, because of its need for financial support. U.S. Dep't of State, The Philippines: Profile of Asylum Claims and Country Conditions (1994).
 
 
 7
 Jaramillo argues that the NPA did or will impute a political opinion to him based on his failure to meet its demands. Jaramillo's refusal to pay the NPA is insufficient to establish that the NPA would likely believe Jaramillo's refusal was politically motivated; likewise, it does not support a claim that the NPA would persecute him on account of that imputed political opinion, rather than on account of his refusal to support the group financially. See id. at 482-483. Jaramillo's argument is particularly unavailing in light of his testimony that he told the NPA that the reason he would not make any more payments was because he had "no money to pay." Substantial evidence supports the BIA's determination that Jaramillo failed to establish past persecution or a well-founded fear of future persecution on account of any real or imputed political opinion.
 
 
 8
 Finally, Jaramillo argues that he was persecuted because of his membership in a particular social group--a group of "successful businessmen." This argument fails because Jaramillo did not present any evidence to the IJ regarding this "social group" or its parameters. Moreover, a social group refers to "closely affiliated" individuals that possess "some common characteristic that is fundamental to their identity as a member of [the] discrete social group." Li v. INS, 92 F.3d 985, 987 (9th Cir.1996) (quoting Sanchez-Trujillo v. INS, 801 F.2d 1571, 1576 (9th Cir.1986)). It would be quite a stretch to say that success in the career of choice creates the type of close-knit social group contemplated by the immigration statutes. "Individuals falling within the parameters of this sweeping demographic division naturally manifest a plethora of different lifestyles, varying interests, diverse cultures and contrary political leanings" so that the class would be so broad as to "render the definition of 'refugee' meaningless." Sanchez-Trujillo, 801 F.2d at 1577. Substantial evidence supports the BIA's determination that Jaramillo did not establish past persecution or fear of future persecution on account of his membership in a "particular social group."
 
 
 9
 Because Jaramillo failed to establish his eligibility for asylum, withholding of deportation and involuntary departure were also not appropriate.
 
 
 10
 PETITION FOR REVIEW DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3