107 F.3d 877
 1997-1 Trade Cases P 71,808
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
FEDERAL TRADE COMMISSION, Plaintiff-Appellee,
v.
SPECTRUM RESOURCES GROUP, INC., Spectrum Resources Group,
Ltd., Integrated Wireless, Inc., Midas Media I, Ltd., (a/k/a
Midas Media, Ltd.), Midas Media, Inc., James D. Greenbaum,
Jeff Jolcover, Charles C. Davis, and Sid Rudich,
Defendants-Appellants.
 No. 95-17368.
 United States Court of Appeals, Ninth Circuit.
 Submitted and Argued Feb. 12, 1997.
Decided March 6, 1997.
 
 1
 Before: SCHROEDER and O'SCANNLAIN, Circuit Judges, KELLEHER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Spectrum Resources Group, Inc., Midas Media, James Greenbaum, John Jolcover, and related entities and individuals appeal the district court's final judgment and order for permanent injunction determining that they engaged in unfair and deceptive acts or practices by making false representations to investors in various wireless cable television services, in violation of the Federal Trade Commission Act, 15 U.S.C. § 45, and holding them liable for redress to the consumers they defrauded in the total amount of $5,137,500. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review this restitution order and the amount awarded for an abuse of discretion, United States v. Pappadopoulos, 64 F.3d 522, 530 (9th Cir.1995), and we affirm the district court's judgment.
 
 
 4
 * This action was commenced by the Federal Trade Commission ("Commission") seeking injunctive and monetary equitable relief pursuant to Section 13(b) of the Federal Trade Commission Act ("Act"), 15 U.S.C. § 53(b), for alleged unfair and deceptive acts or practices in violation of Section 5 of the Act, 15 U.S.C. § 45. The district court entered a temporary restraining order and then a preliminary injunction enjoining certain acts and practices of the defendants, freezing the defendants' assets, and appointing a temporary receiver. Trial on the permanent injunction began in October 1994. On February 22, 1995, the court issued its Findings of Fact and Conclusions of Law ("Findings"), which found that four individuals, James Greenbaum ("Greenbaum"), Jeff Jolcover ("Jolcover"), Charles Davis ("Davis"), and Sid Rudich ("Rudich"), along with three corporations (Spectrum Resources Group, Inc. ("SRGI"), Integrated Wireless, Inc. ("IWI"), and Midas Media, Inc. ("MMI")) and two partnerships (Spectrum Resources Group, Ltd. ("SRGL") and Midas Media I, Ltd. ("MML")) that the individuals controlled, all operating as a continuing business enterprise, engaged in unfair and deceptive acts or practices by making false representations to investors in various wireless cable television services.
 
 
 5
 While the defendants do not agree with the court's findings of fact and conclusions of law, they do not contest that there was sufficient evidence in the record to support the factual findings.
 
 II
 
 6
 Spectrum and Jolcover first argue that the district court entered monetary judgments against them solely to disgorge their ill-gotten gains. In its June 28, 1995 Judgment, the court ordered the award for consumer redress, not merely disgorgement:
 
 
 7
 The Commission, or its agent, shall deposit all funds ordered to be paid into an interest bearing account, to be used by the Commission for consumer redress, for defendants' acts. Any redress shall be made to eligible customers, on a pro rata basis, pursuant to a plan of distribution approved by this Court. The Federal Trade Commission shall have sole discretion to determine eligibility for consumer redress.... In the event that any monies remain in the trust account after any distribution to defendants' customers, or the Federal Trade Commission determines that distribution of said funds to Defendants' customers is impractical, such funds shall be paid to the U.S. Treasury as equitable disgorgement.
 
 
 8
 (Order at 7) (emphasis added).
 
 
 9
 The district court should have used the word restitution instead of equitable disgorgement which arose out of a pleading by the government. While the district court used the terms disgorgement and recision interchangeably in its Findings, it is clear from its opinion taken as a whole that the monetary award was intended as restitution, not merely disgorgement. For instance, the court found "that the amounts of money collected from the disgorgement constituting redress funds should be refunded to investors on a pro rata basis depending on the amount each invested. The court directs the Federal Trade Commission to file a proposed redress plan within sixty (60) days." (Findings at 20.) If the court had intended solely to disgorge the defendants' ill-gotten gains, then it would not have directed the Commission to develop a "redress plan."
 
 III
 
 10
 Spectrum and Jolcover next argue that the district court incorrectly determined the amount of ill-gotten gains. Jolcover, for instance, claims that the court calculated the amount of disgorgement as the total amount of funds paid by investors for their interests in the three television projects less amounts invested in the cable systems by Midas Media, Inc. This claim is inaccurate. First, the award constituted restitution, not merely disgorgement. Second, the court states that it made deductions from the gross amounts received to determine the profits:
 
 
 11
 The court finds that Midas's unjust enrichment from the unfair and deceptive acts and practices regarding the Omaha offering is $1.1 million. That represents the $2.6 million received from WDPI, less $1 million in capital and $500,000 for the rights. The court further finds that defendant Jolcover had the authority to control Midas' acts and practices and that Jolcover and Midas are jointly and severally liable for the $1.1 million in unjust enrichment from the Omaha offering. The court further finds that Laredo, L.C. invested $1.8 million to obtain its interest in the Omaha system. SRGL received 15% of $270,000 for sales commissions. The court finds that SRGL, MML, Greenbaum, Jolcover, and Davis are jointly and severally liable for the $1,250,000 in unjust enrichment from the Laredo and Beaumont offerings.
 
 
 12
 (Findings at 20.)
 
 
 13
 Contrary to defendants' argument, sufficient evidence regarding the monetary award was presented at trial. While the court could have required the defendants to pay an amount equal to consumers' financial losses ($7.25 million), the court chose instead to limit defendants' financial obligations to the ill-gotten gains received during the phases of the scheme in which each defendant participated.
 
 IV
 
 14
 And finally, the individual defendants argue that joint and several liability is inappropriate on these facts. An individual may be held liable under the Act for corporate practices if the FTC meets these three prerequisites: (i) the corporate practices were misrepresentations or omissions of a kind usually relied on by reasonably prudent persons and consumer injury resulted; (ii) the individuals participated directly in the practices or had authority to control them; and (iii) the individuals had some knowledge of the fraudulent or dishonest practices. FTC v. Amy Travel Service, Inc., 875 F.2d 564 (7th Cir.), cert. denied, 493 U.S. 954 (1989). See also FTC v. Pantron I Corp., 33 F.3d 1088 (9th Cir.1994) (holding trial court abused its discretion in refusing to hold corporation's president and sole owner personally liable for monetary relief for false advertisement under the Act, where president was aware of high likelihood that claims of scientific support for hair loss formula's efficacy were false); L.B. Indus., Inc. v. Smith, 817 F.2d 69, 71 (9th Cir.1987) (individual liability of corporate director for fraud requires control, participation, or knowing acquiescence).
 
 
 15
 Here, the defendants do not dispute that there was sufficient evidence for the court to find that their fraudulent and deceptive corporate practices caused consumers injury. Furthermore, the defendants admit that: (i) James Greenbaum was president and sole officer and director of IWI, the managing general partner of SRGL and (ii) Jeff Jolcover is president and sole officer and director of Midas, the managing general partner of MML. In a detailed findings of fact, the district court indeed found that all four individuals had the necessary authority and knowledge:
 
 
 16
 Each of the individual defendants participated in, or had authority to control the acts and practices alleged and had actual knowledge of the material misrepresentations or omissions. Further, they were indifferent to the truth of the representations and were aware of the high probability that this would constitute a fraud on potential investors.
 
 
 17
 1. James Greenbaum controlled, formulated and participated in the unfair and deceptive practices of SRGL in connections with its offerings in Beaumont-Port and Laredo.
 
 
 18
 2. Jeff Jolcover controlled, formulated, and participated in the unfair and deceptive acts and practices of Midas and MML in connection with the offerings in Beaumont-Port Arthur, Laredo, and Omaha.
 
 
 19
 3. Charles Davis directly controlled, formulated, or participated in and had knowledge of unfair and deceptive practices of both SRGL and SRGI in connection with the offerings in Beaumont-Port Arthur, Laredo, and Omaha.
 
 
 20
 4. Sid Rudich controlled, formulated, and participated in, and had the knowledge of, unfair, deceptive practices of SRGI in connection with the offerings in Omaha.
 
 
 21
 (summarized from Findings at 18-19.).
 
 
 22
 Because the individual defendants satisfy the three prerequisites for individual liability, we conclude that the court did not err in holding Greenbaum, Jolcover, Davis and Rudich jointly and severally liable.
 
 V
 
 23
 We therefore affirm the district court's order of June 28, 1995, holding defendants liable for $5,137,500 in restitution to consumers injured by their fraudulent conduct.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3