T.C. Summary Opinion 2018-20

UNITED STATES TAX COURT

SALINA JIVANI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19467-16S L.                    Filed April 5, 2018.

Salina Jivani, pro se.

Jamie A. Schindler, John T. Arthur, and Brandon S. Cline, for respondent.

SUMMARY OPINION

LEYDEN, Special Trial Judge:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]All section references are to the Internal Revenue Code, as amended, in

(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

The Internal Revenue Service (IRS)[2] Office of Appeals (Appeals Office) issued petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) dated August 5, 2016. The notice of determination sustained a notice of Federal tax lien filed with respect to petitioner's unpaid individual tax liabilities for 2012 and 2013.

The remaining[3] issues for decision are whether: (1) petitioner is liable for an addition to tax under section 6651(a)(1) for failure to timely file a tax return (failure to timely file), an addition to tax under section 6651(a)(2) for failure to timely pay the tax shown on a tax return (failure to timely pay), and an addition to

---

[1](...continued)
effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2]The Court uses the term "IRS" to refer to administrative actions taken outside of these proceedings. The Court uses the term "respondent" to refer to the Commissioner of Internal Revenue, who is the head of the IRS and is respondent in this case, and to refer to actions taken in connection with this case.

[3]Petitioner disputed an addition to tax under sec. 6654(a) for the underpayment of estimated tax for 2012 during the collection due process (CDP) hearing. However, the underlying tax liability for 2012, including the addition to tax under sec. 6654(a), has been fully paid. Accordingly, the issue of petitioner's liability for the addition to tax under sec. 6654(a) for 2012 is moot. See Greene-Thapedi v. Commissioner, 126 T.C. 1, 5-8 (2006).

tax under section 6654(a) for the underpayment of estimated tax for 2013; (2) the Appeals Office abused its discretion in not applying a $16,000 remittance against petitioner's 2013 individual tax liability; and (3) the Appeals Office abused its discretion in sustaining the notice of Federal tax lien filing with respect to 2012 and 2013.

For the reasons stated herein, the Court holds that: (1) petitioner is liable for the additions to tax under sections 6651(a)(1) and (2) and 6654(a) for 2013; (2) the Appeals Office did not did abuse its discretion in not applying the $16,000 remittance against petitioner's 2013 individual tax liability; and (3) the Appeals Office did not abuse its discretion in sustaining the notice of Federal tax lien filing with respect to 2012 and 2013.

## Background

Some of the facts are stipulated and so found. Petitioner resided in Florida when she timely filed her petition.

## I.    Individual Tax Returns

Petitioner filed her individual Federal income tax returns for 2008 through 2013 late.[4]  Only petitioner's 2013 individual tax return is at issue in this case. See infra pp. 13-14.

Petitioner filed her 2013 individual tax return late, on April 14, 2015, after requesting an extension to file it by October 15, 2014.  Petitioner reported a total tax liability of $62,781 and a Federal income tax withholding credit of $1,600 on that individual tax return.  Petitioner did not report any estimated tax payments on her 2013 individual tax return.  On May 18, 2015, the IRS assessed the self-reported total tax of $62,781, the addition to tax for failure to timely file of $13,765.72, the addition to tax for failure to timely pay of $3,826.47, the addition to tax for the underpayment of estimated tax of $439, and interest of $2,152.13. Petitioner had submitted a payment of $45,620 with the late-filed 2013 individual tax return.  The IRS applied that payment and the Federal income tax withholding

[4]Petitioner requested extensions until October 15, 2009, October 15, 2011, October 15, 2012, and October 15, 2013, to file individual tax returns for 2008, 2010, 2011, and 2012, respectively.  She did not file those tax returns by the requested extended deadlines.  As relevant in this case, petitioner filed her 2012 individual tax return showing a tax of $23,612.  Petitioner did not request an extension to file her 2009 individual tax return past the original due date.

credit and issued a notice and demand for payment letter to petitioner at her last known address for the balance, which she did not pay.

## II.     S Corporation's Tax Returns

Petitioner is an attorney who operated a law business--Salina Jivani, Esquire–through a subchapter S corporation (hereinafter S corporation) during 2010 through 2013.  She filed the S corporation's tax returns late for 2010, 2011, 2012, and 2013, on January 16, January 21, February 27, and April 16, 2015, respectively.  The IRS assessed a section 6699(a) penalty of $2,340 for failing to timely file each tax return on March 2, 2015, for 2010 and 2011 and on March 30 and May 18, 2015, for 2012 and 2013, respectively.[5]  The assessments for the S corporation's tax returns are not at issue in this case.

## III.    The $16,000 Remittance

Petitioner remitted a check for $16,000 (hereinafter sometimes referred to as the $16,000 remittance) to the IRS for the S corporation sometime around April 2014.  The check was drawn from the S corporation's bank account, made payable

---

[5]An S corporation must file an annual tax return reporting its income and other matters on a Form 1120-S, U.S. Income Tax Return for an S Corporation. Sec. 6037(a); sec. 1.6037-1(a), Income Tax Regs.  An S corporation that does not timely file its annual tax return is liable for a penalty equal to $195 per shareholder for every month the tax return is late (but not to exceed 12 months).  Sec. 6699(a) and (b).  For an S corporation with one shareholder the maximum sec. 6699(a) penalty for a taxable year is $2,340.

to the IRS,[6] and dated "4-14-13". On the memo line of the check petitioner wrote "2013 taxes" but did not write her Social Security number, an employer identification number, or a tax return form number.

The IRS deposited the check on April 18, 2014, and placed the funds in an unidentified remittance drop account. At the time the IRS deposited the check, the S corporation's tax returns for 2010, 2011, 2012, and 2013 had not yet been filed. Accordingly, the IRS had not yet assessed the section 6699(a) penalty for any of those years. The IRS sent a refund check of $16,000 made payable to the S corporation and dated August 13, 2014.

On October 11, 2014, petitioner returned the refund check to the IRS by certified mail with a letter. At the time petitioner returned the refund check to the IRS, she had not yet filed her 2013 individual tax return. Petitioner wrote: "Dear IRS Agent, Please apply the enclosed [refund] check for $16,000 to my personal 1040 form for year 2013." Petitioner provided her full name, Social Security number, address, and phone number in the letter.

The IRS subsequently canceled the refund check on February 10, 2015, because it had not been deposited or cashed by the payee, the S corporation. At

---

[6]The check bears a handwritten notation "IRS" but is followed by a stamped notation "United States Treasury".

the time the IRS canceled the refund check, the S corporation had filed its tax returns for 2010 and 2011 but not for 2012 and 2013.

On February 12, 2015, the IRS applied the $16,000 remittance against the S corporation's tax accounts for 2010, 2011, and 2012 in the following amounts: (1) $2,231.09[7] for 2010, (2) $2,340 for 2011, and (3) $2,340 for 2012. That same day the IRS also applied the remaining portion of the $16,000 remittance against the S corporation's tax account for 2013.

Petitioner mailed another letter dated July 16, 2015, to the IRS to inquire about the $16,000 remittance. In that letter petitioner wrote:

> I request you to please waive the failure to pay and file penalties in approximately $30,000 from years 2011-2013 for form 1040 and about $16,000 for form 1120S for failure to file corporation [r]eturn. I assumed the matter was resolved by my accountant. I was emotionally overwhelmed from the divorce to keep tabs. I filed and paid all the taxes. [Emphasis added.]

IV.   Notice of Federal Tax Lien Filing and Request for CDP Hearing

On February 2, 2016, the IRS issued petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing with respect to her unpaid individual tax liabilities for 2012 and 2013. Petitioner filed a Form 12153, Request for a

---

[7]The S corporation's tax account for 2010 had overpayment credits totaling $108.91 transferred from a Form 941, Employer's Quarterly Federal Tax Return, for 2014.

Collection Due Process or Equivalent Hearing, to challenge the notice of Federal tax lien filing. In the Form 12153 petitioner did not check any of the boxes to propose a collection alternative or to request a lien subordination, discharge, or withdrawal. Instead, in the "other" section petitioner wrote: "I am requesting IRS to waive penalties--please see attached explanation".

In an attachment to the Form 12153, petitioner stated that the $16,000 remittance she had sent to the IRS for her 2013 individual tax liability was missing and requested that it be applied to reduce that individual tax liability, which presumably included the additions to tax. Petitioner attached to the Form 12153 copies of the letters dated October 11, 2014, and July 16, 2015, that she had previously mailed to the IRS. Petitioner also requested that the IRS reduce the additions to tax assessed for 2012 and stated:

> As I started earning, I handed the paper work to my accountant. I paid taxes a few times and assumed all papers were filed. After I realized taxes were not filed, I contacted the accountant and he said he would take care of it. After I learned he was terminally ill, I located another accountant who filed the taxes. I started paying all the taxes as quickly as I could. Please reduce my penalties as much as you can so I can have a fresh start.

V.   The CDP Hearing

On April 13, 2016, the IRS issued petitioner a letter to notify her that it had received her request for a CDP hearing and was forwarding it to the Appeals

Office. On June 3, 2016, the Appeals Office settlement officer (SO) sent petitioner a letter to schedule a telephone CDP hearing for June 28, 2016. In that letter the SO requested that petitioner submit a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, within 14 days in order for her to consider collection alternatives. Petitioner did not submit a completed Form 433-A.

On June 28, 2016, the SO held the telephone CDP hearing with petitioner. The SO confirmed that she did not have prior involvement with petitioner for the tax and tax years at issue in the CDP hearing. During the CDP hearing, petitioner argued that the lien amount should be less than $45,000. The SO informed petitioner that although the individual tax liability for 2012 had been paid in full as of April 15, 2016, the filing of the notice of Federal tax lien was still appropriate because petitioner had an unpaid individual tax liability for 2013.

Petitioner inquired about the refund check she had returned to the IRS with the request that the $16,000 remittance be applied against her 2013 individual tax liability. The SO researched the issue and informed petitioner that "it was on her business account". The SO provided petitioner with a customer service phone number to call about her S corporation's tax accounts.

Petitioner also requested that the additions to tax assessed be abated, and the SO informed petitioner she needed to further research whether petitioner was eligible for an abatement. The SO's notes do not indicate for which additions to tax petitioner sought abatement or which additions to tax the SO needed to research.

After the CDP hearing, the Appeals Office abated the additions to tax for failure to timely file and failure to timely pay for 2012 under the IRS' first-time abate administrative waiver under Internal Revenue Manual (IRM) pt. 20.1.1.3.6.1 (Aug. 5, 2014).[8] On July 25, 2016, the SO called petitioner and notified her that the 2012 additions to tax for failure to timely file and for failure to timely pay were abated.[9] Petitioner asked the SO also to abate the additions to tax for 2013. The SO instructed petitioner to submit a letter to the IRS requesting that abatement.[10] The record does not contain any evidence that petitioner submitted a

---

[8]The IRS' first-time abate administrative waiver does not apply to an addition to tax under sec. 6654(a) for the underpayment of estimated tax. Internal Revenue Manual (IRM) pt. 20.1.1.3.6.1 (Aug. 5, 2014).

[9] The abatements for 2012 gave rise to an overpayment credit of $8,532, which the IRS applied against petitioner's individual tax liability for 2013.

[10]IRM pt. 20.1.1.3.6.1(3), in effect at the time of the CDP hearing, stated that the first-time abate administrative waiver applied only to a single tax period and relief for all subsequent tax periods would be based on a showing of

(continued...)

letter requesting abatement for reasonable cause of any of the additions to tax for 2013.

Before issuing the notice of determination, the SO concluded that the assessments for 2012 and 2013 were properly made, that notice and demand for payment letters were mailed to petitioner's last known address, and that balances were due when the notice of Federal tax lien was filed. On August 5, 2016, the Appeals Office issued petitioner the notice of determination, sustaining the notice of Federal tax lien filing.

## Discussion

### I. Jurisdiction and Standard of Review

Section 6321 imposes a lien in favor of the United States on all property and rights to property of a taxpayer where there exists a failure to pay any tax liability after demand for payment. The lien generally arises automatically at the time assessment is made. Sec. 6322. Section 6323(a), however, provides that the lien shall not be valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until the Commissioner files a notice of Federal

---

[10](...continued)
reasonable cause.

tax lien with the appropriate public officials. Section 6320 sets forth procedures to afford protections for taxpayers upon the filing of a notice of Federal tax lien.

Section 6320(a)(1) establishes the requirement that the Commissioner notify in writing the taxpayer described in section 6321 of the filing of a notice of Federal tax lien under section 6323. This notice required by section 6320 must be sent not more than five business days after the notice of Federal tax lien is filed and must inform the taxpayer of the opportunity for administrative review of the matter in the form of a CDP hearing before the Appeals Office. Sec. 6320(a)(2)(C), (3).

If a CDP hearing is requested, section 6320(b) and (c) grants the taxpayer the right to a fair hearing before an impartial Appeals officer, generally to be conducted in accordance with the procedures described in section 6330(c), (d), and (e). At the CDP hearing the Appeals officer conducting the hearing must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1); see sec. 6320(c). The taxpayer may raise at the hearing "any relevant issue relating to the unpaid tax", including appropriate spousal defenses, challenges to the appropriateness of the collection action, and offers of collection alternatives. Sec. 6330(c)(2)(A); see sec. 6320(c). Within 30 days after

the Appeals Office issues a notice of determination, the taxpayer may appeal the determination to the Court. Sec. 6330(d)(1); see sec. 6320(c).

In reviewing an IRS administrative determination in a CDP case, if the underlying tax liability is properly in dispute the Court reviews the issue de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). The Court reviews all other determinations for abuse of discretion. Id. at 182. Petitioner timely petitioned the Court for review of the notice of determination.

II.     Petitioner's 2013 Individual Tax Liability

In addition to assessing petitioner's self-reported tax for 2013, the IRS assessed the additions to tax for failure to timely file and failure to timely pay, the addition to tax for the underpayment of estimated tax, and interest for 2013. The term "underlying tax liability" in section 6330(c)(2)(B) includes tax, additions to tax, and interest. See Katz v. Commissioner, 115 T.C. 329, 339 (2000). A taxpayer may challenge the existence or amount of her underlying tax liability in a CDP hearing only if she did not receive a notice of deficiency or otherwise have a prior opportunity to contest the underlying tax liability. Sec. 6330(c)(2)(B); see Montgomery v. Commissioner, 122 T.C. 1, 8-10 (2004). However, the Court can only consider on review an issue that was properly raised at the CDP hearing. Sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

Petitioner did not dispute in the Form 12153, during the CDP hearing, in her petition, or at trial the assessment of her self-reported tax for 2013 or the assessment of interest for 2013. The self-reported tax and interest therefore are not properly before the Court. See sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs.; see also Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded.").

Instead, petitioner has consistently requested an abatement of the additions to tax for 2013. The Court decides the correctness of the Appeals Office's determination regarding these additions to tax de novo because petitioner did not receive a notice of deficiency for 2013, did not have a prior opportunity to challenge these additions to tax for 2013, and properly raised the issue of the additions to tax for 2013 during the CDP hearing and in her petition. See sec. 6330(c)(2)(B); Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. at 182; sec. 301.6320-1(e)(3), Q&A-E2, Proced. & Admin. Regs. The Commissioner bears the burden of production with respect to any addition to tax. Sec. 7491(c).

A.    Additions to Tax Under Section 6651(a)(1) and (2)

Section 6651(a)(1) imposes an addition to tax for a taxpayer's failure to file a required tax return on or before the specified filing date, including extensions.

The Commissioner satisfies his burden of production for an addition to tax for failure to timely file by providing sufficient evidence to show that the taxpayer filed her tax return late. Wheeler v. Commissioner, 127 T.C. 200, 207-208 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008); Higbee v. Commissioner, 116 T.C. 438, 447 (2001). The record establishes that the 2013 individual tax return was required to be filed by October 15, 2014, and was filed past the extended due date, on April 14, 2015. Respondent therefore has met his burden of production with respect to the addition to tax under section 6651(a)(1) for failure to timely file for 2013.

Section 6651(a)(2) imposes an addition to tax for failure to pay the amount shown as tax on a required tax return on or before the date prescribed for payment of the tax, including extensions of time for payment. The Commissioner satisfies his burden of production for an addition to tax for failure to timely pay by providing sufficient evidence to show that a taxpayer paid the amount required to be shown on a tax return for the year at issue after the date prescribed for payment of the tax. Wheeler v. Commissioner, 127 T.C. at 210; Glover v. Commissioner, T.C. Memo. 2010-228, 2010 Tax Ct. Memo LEXIS 262, at *11.

The date prescribed for payment of the tax shown on the 2013 individual tax return was April 15, 2014. Petitioner's late-filed 2013 individual tax return reported a total tax of $62,781 and a Federal income tax withholding credit of

$1,600. Petitioner submitted a partial payment of $45,650 with the tax return on April 14, 2015, a date well after the payment due date of April 15, 2014. A portion of the total tax required to be shown on the 2013 individual tax return remains unpaid as of the date of the trial. She has not proven that she paid the remaining part of her 2013 individual tax return on time. As discussed infra pp. 22-23, the Court does not find credible petitioner's testimony that the date on the check was the date petitioner submitted the $16,000 remittance to the IRS or that petitioner designated the $16,000 remittance to be applied to her 2013 individual tax liability. Therefore, respondent has met his burden of production with respect to the addition to tax under section 6651(a)(2) for failure to timely pay for 2013.

The burden of showing reasonable cause under section 6651(a)(1) and (2) remains with petitioner. See Higbee v. Commissioner, 116 T.C. at 446-448. A taxpayer is not liable for an addition to tax for failure to timely file or failure to timely pay if she shows the untimeliness or failure is due to reasonable cause and not due to willful neglect. Sec. 6651(a)(1) and (2); Higbee v. Commissioner, 116 T.C. at 447. Petitioner has not shown reasonable cause for failing to timely file her 2013 individual tax return or for failing to timely pay the amount shown as tax on the 2013 individual tax return.

"If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause." Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. The taxpayer can show that she did not act with "willful neglect" if she can "prove that the late filing did not result from a 'conscious, intentional failure or reckless indifference.'" Niedringhaus v. Commissioner, 99 T.C. 202, 221 (1992) (quoting United States v. Boyle, 469 U.S. 241, 245-246 (1985)).

Petitioner testified that she recalled requesting the extension to file the 2013 individual tax return by October 15, 2014, that she had relied on her accountant, and that she had assumed that her accountant was "handling it" and would timely file the 2013 individual tax return. Petitioner further testified at trial that her accountant had become ill and subsequently passed away and that she had retained another accountant to prepare and file her 2013 individual tax return; but she neither testified nor submitted other evidence to explain when she had discovered that her accountant was ill or the efforts she made find another accountant to ensure that she could file her 2013 individual tax return by the extended due date. Petitioner also testified that she relied on her past experiences with other accountants who had filed extension requests and timely filed her tax returns for prior years. However, petitioner also filed her 2008, 2009, 2010, 2011, and 2012

individual tax returns late. The Court does not find petitioner's testimony about relying on her past experiences with other accountants credible.

Petitioner also testified that she did not "know anything as far as taxes are concerned." However, she also testified that she was aware she had to sign a tax return even if it was filed electronically and that she "was not on top of that". Petitioner acknowledged at trial: "What I should have done was be on top of [the accountant] * * * and say hey, tell [me] what's going on. Tell me [about] the signature. Do I have to do anything or not". Petitioner, as an attorney, understands the importance of filing due dates.

Petitioner has not proved that she had reasonable cause for failing to timely pay the amount shown as tax on the 2013 individual tax return. To prove reasonable cause for failure to timely pay the amount shown as tax on a tax return, the taxpayer must show that she exercised ordinary business care and prudence in providing for the payment of her tax liability and nevertheless was either unable to pay the tax or would suffer undue hardship if she paid the tax on the due date. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; see Merriam v. Commissioner, T.C. Memo. 1995-432, 1995 Tax Ct. Memo LEXIS 431, at *39-*40, aff'd, 107 F.3d 877 (9th Cir. 1997). Petitioner did not present any evidence to show that timely paying the amount shown as tax on the 2013 individual tax return would

have created an undue hardship for her. Petitioner did not establish that she had reasonable cause for failing to timely pay the amount shown as tax on the 2013 individual tax return.

### B.  Addition to Tax Under Section 6654(a)

Section 6654(a) imposes an addition to tax on an underpayment of estimated income tax unless an exception applies. See sec. 6654(e). A taxpayer has an obligation to pay estimated tax only if she has a "required annual payment". Wheeler v. Commissioner, 127 T.C. at 212. The required annual payment is equal to the lesser of: (1) 90% of the tax shown on the taxpayer's tax return for that year (or, if no return is filed, 90% of the tax for such year), see sec. 6654(d)(1)(B)(i), or (2) if the taxpayer filed a tax return for the immediately preceding taxable year, 100%[11] of the tax shown on that tax return, see sec. 6654(d)(1)(B)(ii).

The amount of an underpayment under section 6554(a) is the excess of the required installment of estimated tax over the amount of the installment paid on or before the due date of the installment. Sec. 6654(b)(1). The amount of the required installment is 25% of the required annual payment. Sec. 6654(d)(1)(A).

_____

[11]The applicable percentage with respect to petitioner's 2013 individual tax return is 100% because the adjusted gross income shown on her individual tax return for the preceding taxable year, 2012, was less than $150,000. See sec. 6654(d)(1)(C).

The taxpayer is required to pay four installments by April 15, June 15, and September 15 of the taxable year and by January 15 of the following taxable year. Sec. 6654(c)(1) and (2). If a taxpayer challenges the section 6654(a) addition to tax, the Commissioner must introduce evidence to prove that the taxpayer had an obligation to make a required annual payment for the year at issue by showing whether the taxpayer filed a tax return for the prior year and, if so, the amount of tax shown on that tax return. Secs. 6654(d)(1)(B), 7491(c); Wheeler v. Commissioner, 127 T.C. at 212.

Petitioner had a required annual payment for 2013. Petitioner filed her 2012 individual tax return showing tax of $23,612 and her 2013 individual tax return showing tax of $62,781. Petitioner's required annual payment for 2013 was $23,612, 100% of the tax shown on the 2012 individual tax return which is less than 90%--$56,502.90--of the tax shown on the 2013 individual tax return. Petitioner did not pay any required installments of estimated tax for 2013 on or before April 15, June 15, or September 15, 2013, or January 15, 2014--the due dates of the installments. Instead, petitioner remitted a partial payment of $45,620 on April 14, 2015, with her late-filed 2013 individual tax return. Respondent therefore has satisfied his burden of production as to the addition to tax under section 6654(a) for the underpayment of estimated tax for 2013.

The addition to tax under section 6654(a) is mandatory regardless of extenuating circumstances or reasonable cause unless a taxpayer can place herself under one of the exceptions provided in that section.  Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980); Estate of Ruben v. Commissioner, 33 T.C. 1071, 1071-1072 (1960).  Section 6654(e) provides three exceptions,[12] but on the basis of the record, none of the exceptions applies to the underpayment of estimated tax for 2013.[13]  Accordingly, petitioner is liable for the section 6654(a) addition to tax for 2013.

## III.   The $16,000 Remittance

Petitioner challenged the SO's determination not to apply the $16,000 remittance from the S corporation's tax account as a payment toward her 2013

[12]First, the addition to tax is not applicable if the tax shown on the taxpayer's tax return for the year in question (or, if no tax return is filed, the taxpayer's tax for that year), reduced by any allowable credit for wage withholding, is less than $1,000.  Sec. 6654(e)(1).  Second, the addition to tax is not applicable if the taxpayer's liability for tax for the preceding year was zero.  Sec. 6654(e)(2).  Third, the addition to tax may be waived under two circumstances:  (1) if a casualty, a disaster, or other unusual circumstances would make it inequitable and against good conscience to impose the addition to tax or (2) if the taxpayer (a) retired after having attained the age of 62 or (b) become disabled and the underpayment of estimated tax was due to reasonable cause and not willful neglect.  Sec. 6654(e)(3)(A) and (B).

[13]Although there was a Federal income tax withholding credit of $1,600 for 2013, the tax shown on the 2013 individual tax return reduced by this credit-- $61,181--was more than $1,000.  See sec. 6654(e)(1).

individual tax liability.  The Court understands that petitioner would now like to reduce her 2013 individual tax liability, including the additions to tax, by applying the $16,000 remittance that was applied against the S corporation's tax liabilities against her 2013 individual tax liability.  Whether a de novo standard of review or an abuse of discretion standard applies in review of the proper application of a payment against the tax liability at issue in the CDP hearing,[14] petitioner has not met her burden of proof.  Petitioner has failed to show that the remittance was intended for anything other than the S corporation's tax account.

Petitioner did not provide any testimony or other evidence to suggest that the $16,000 remittance related to her 2013 individual tax liability.  Petitioner testified that she had mailed the check in April 2013 with a letter directing the IRS to apply the payment against her 2013 individual tax account and that she included her Social Security number in that letter.  However, petitioner could not find that letter and did not produce any other evidence of that letter.  The Court does not

_____

[14]See Freije v. Commissioner, 125 T.C. 14, 23, 26-27 (2005). Compare Landry v. Commissioner, 116 T.C. 60, 62 (2001) (applying de novo standard where taxpayer challenged application of overpayment credits, reasoning that "the validity of the underlying tax liability, i.e., the amount unpaid after application of credits to which petitioner is entitled, * * * [was] properly at issue"), with Orian v. Commissioner, T.C. Memo. 2010-234, 2010 Tax Ct. Memo LEXIS 269, at *15 (applying abuse of discretion standard where taxpayer challenged application of tax payments), and Kovacevich v. Commissioner, T.C. Memo. 2009-160, 2009 Tax Ct. Memo LEXIS 160, at *15 (same).

find her testimony that she mailed the check in 2013 credible. Rather, the more likely inference is that petitioner mailed the check to the IRS sometime closer to April 18, 2014, the date the IRS deposited the check.

The record supports a finding that the SO did not abuse her discretion in determining the IRS properly treated the remittance as one intended for the S corporation, rather than for the 2013 individual, tax liability. Petitioner submitted the check from the S corporation's bank account. The notation in the memo line was "2013 taxes". At the time the IRS received the remittance, petitioner had not filed her 2013 individual tax return. The IRS reasonably concluded that the remittance was intended to be applied against the S corporation's tax account. Without any tax assessments against the S corporation outstanding, the IRS issued a refund check payable to the S corporation.

Petitioner was aware that there would be a tax liability for her S corporation as evidenced by her July 16, 2015, letter. In that letter, she expressly referenced penalties totaling $16,000 for the S corporation's failure to timely file tax returns.

Petitioner's return of the refund check to the IRS with a letter instructing the IRS to apply the amount against her 2013 individual tax return did not change the application of the remittance against the S corporation's tax account. The refund check was made payable to the S corporation and therefore still derived from the

remittance applied against the S corporation. Moreover, at the time petitioner returned the refund check, she had not filed her 2013 individual tax return and, consequently, did not have an individual tax liability assessed for that year. See Rev. Proc. 2002-26, sec. 3.01, 2002-1 C.B. 746 ("If additional taxes, penalty, and interest for one or more taxable periods have been <u>assessed</u> against a taxpayer * * * at the time the taxpayer voluntarily tenders a partial payment * * * and the taxpayer provides specific written directions as to the application of the payment, the Service will apply the payment in accordance with those directions." (Emphasis added.)). Even at the time the IRS canceled the refund check, petitioner had not yet filed her 2013 individual tax return. However, petitioner had filed the 2010 and 2011 tax returns for the S corporation. See <u>id.</u>

Accordingly, the SO correctly informed petitioner that the $16,000 remittance had been applied for her S corporation and provided her a telephone number to call for more information about the S corporation's tax accounts. The Appeals Office did not abuse its discretion in denying petitioner's request to apply the $16,000 remittance against her 2013 individual tax liability.

IV.    Determination To Sustain the Notice of Federal Tax Lien Filing

Petitioner's 2012 individual tax liability was fully paid after the filing of the notice of Federal tax lien, but her 2013 individual tax liability remains unpaid.

Where, as here, the taxpayer seeks withdrawal of a filed notice of Federal tax lien and the notice has neither been withdrawn nor released, the consideration of a filed notice of Federal tax lien is not moot merely because the taxpayer has paid the related tax liability. See Drilling v. Commissioner, T.C. Memo. 2016-103, at *51-*52.

In deciding whether the SO abused her discretion in sustaining the notice of Federal tax lien, the Court considers whether the SO considered any relevant issues petitioner raised, including collection alternatives or lien subordination, discharge, or withdrawal. See sec. 6330(c)(3)(B). Petitioner did not request a collection alternative or expressly request a lien subordination, discharge, or withdrawal in the Form 12153 or at the CDP hearing. The general rule in this Court is that, on appeal of a collection determination, the Court will limit its review to those issues properly raised during the CDP hearing. Magana v. Commissioner, 118 T.C. 488, 493 (2002); see sec. 301.6320-1(f)(2), Q&A-F3, Proceed. & Admin. Regs.

However, to the extent petitioner's contention during the CDP hearing that the lien amount should be less than $45,000 constituted a request for a lien withdrawal, the Appeals Office did not abuse its discretion in denying the request. The record does not show that petitioner was eligible for a withdrawal of the

notice of Federal tax filing under any of the conditions of section 6323(j).[15] At the time of the CDP hearing petitioner had not fully paid her 2013 individual tax liability. Therefore, the SO's refusal to withdraw the notice of Federal tax lien or file a new one, or to modify the notice of Federal tax lien filing to reduce the lien by the amount of the fully satisfied individual tax liability for 2012, was not an abuse of discretion.

## V. Verification

The Appeals Office's determination must take into consideration, among other things, whether the settlement officer properly verified that the requirements of any applicable law or administrative procedure had been met and whether "any proposed collection action balances the need for efficient collection of taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary." See sec. 6330(c)(3)(A), (C).

---

[15]Sec. 6323(j) provides that the Commissioner may withdraw a notice of Federal tax lien if (1) the filing of the notice of Federal tax lien was premature or otherwise not in accordance with administrative procedures of the Secretary, (2) the taxpayer entered into an installment agreement under sec. 6159 that satisfies the tax liability for which the notice of Federal tax lien was imposed, (3) the withdrawal of the notice of Federal tax lien will facilitate the collection of the tax liability, or (4) the withdrawal is in the best interests of both the taxpayer and the United States.

The record reflects that the SO properly verified that the requirements of all applicable law and administrative procedure were met in the processing of petitioner's case and considered whether the notice of Federal tax lien filing balanced the Government's interest in the efficient collection of taxes with petitioner's concerns that the collection action be no more intrusive than necessary. See secs. 6330(c)(3), 6320(c); Lunsford v. Commissioner, 117 T.C. 183, 184 (2001).

## Conclusion

For reasons discussed above, the Court sustains the Appeals Office's determination in the notice of determination and holds that: (1) petitioner is liable for the additions to tax under section 6651(a)(1) and (2) for 2013, she did not have reasonable cause for filing her 2013 individual tax return late and paying her 2013 tax late, and she is liable for the addition to tax under section 6654(a) for 2013; (2) the Appeals Office did not abuse its discretion in denying petitioner's request to apply the $16,000 remittance against her 2013 individual tax liability; and (3) the Appeals Office did not abuse its discretion in sustaining the notice of Federal tax lien filing with respect to 2012 and 2013.

Respondent may proceed with the collection action as determined in the notice of determination. In reaching the conclusions described herein, the Court

has considered all arguments made, and, to the extent not mentioned above, the Court finds them moot, irrelevant, or without error.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.